Vaughan S. NEWCOME,
Plaintiff–Appellant,
v.
A. Jack ESREY; Shearson Lehman
Brothers, Inc.,
Defendants–Appellees.

No. 87–1603.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 5, 1987.

Decided Dec. 16, 1988.

Thomas Bullene Throckmorton (George W.R. Glass; Scully, Throckmorton & Glass, on brief) for plaintiff-appellant.

Arthur L. Smith (Peper, Martin, Jensen, Maichel and Hetlage, on brief) for defendants-appellees.

Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON and WILKINS, Circuit Judges.

SPROUSE, Circuit Judge:

Vaughan S. Newcome appeals the district court's dismissal of her securities fraud action against A. Jack Esrey and Shearson Lehman Brothers, Inc. (the brokers). Newcome based her federal claims on section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), as well as section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the corresponding Securities Exchange Commission regulation, rule 10b–5, 17 C.F.R. § 240.10b–5. She also included pendent Virginia state-law claims. The district court first found that section 17(a) provides by implication the basis for a private right of action. It then held, however, that the arbitration clause in the brokerage agreement Newcome had signed was enforceable against claims brought under section 17(a)

and dismissed her claim under that section. The district court also dismissed Newcome's section 10(b) claim, holding that it too was barred by the arbitration clause in the brokerage contract, 659 F.Supp. 100. On appeal briefs and oral argument were initially considered by a panel consisting of Judge Sprouse, Judge Chapman, and Judge Boyle.[1] The court thereafter *sua sponte* ordered rehearing en banc without further oral argument. The en banc court now affirms the district court's holding that the arbitration clause is enforceable to prevent litigation of the section 10(b) claim. We also affirm the dismissal of the section 17(a) claim, but on different grounds than those expressed by the district court; we hold that no private right of action is available under section 17(a).[2]

## I

Newcome, a widowed housewife with no business or financial expertise, had wanted to invest the inheritance and life insurance proceeds she had received after her husband's death. Esrey was a stockbroker and financial consultant employed by Shearson Lehman Brothers, Inc. Newcome engaged Esrey to be her investment advisor and to invest her stock portfolio at his discretion in shares of common stock. Upon employing Esrey, Newcome signed a Customer's Agreement. The Customer's Agreement contained a provision requiring arbitration of "any controversy arising out of or relating to [the account], to transactions with [both parties] or to this agreement or the breach thereof...."

Newcome failed to profit as expected from the stock transactions. She brought this action alleging that Esrey engaged in a continuous course of overtrading ("churning") her securities in a manner calculated only to generate excessive commissions. She claimed that Shearson approved and profited from these transactions and that neither defendant informed her of the investments consequences to the account. Newcome also alleged that the overtrading resulted in tax liabilities out of proportion to the profits earned. She claimed that the brokers defrauded her and breached their fiduciary duty to her by failing to manage her account in a prudent manner.

The brokers moved to dismiss Newcome's action on alternative grounds. They contended the section 17(a) claim should be dismissed because that section creates no private cause of action. They further contended that, even if a private cause of action is available under section 17(a), the entire action should be dismissed because the Federal Arbitration Act, 9 U.S. C. §§ 1–14, required both the section 10(b) and the section 17(a) claims to be arbitrated pursuant to the terms of the contract rather than litigated in a judicial forum. The district court, relying on this circuit's decision in *Newman v. Prior*, 518 F.2d 97 (4th Cir.1975), ruled that section 17(a) impliedly creates a private cause of action. It dismissed the entire action, however, ruling that both the section 17(a) and section 10(b) claims were subject to arbitration under the Federal Arbitration Act. In reaching that conclusion, the court found that the holding of *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), does not apply to claims under either section 10(b) or section 17(a).[3] The court held that the

---

**1.** Terrence W. Boyle, United States District Judge for the Eastern District of North Carolina, sitting by designation.

**2.** As a result of our holding that no private right of action exists under section 17(a), we have no reason to discuss the district court's holding that Newcome's section 17(a) claim had to be submitted to arbitration. Since the district court properly dismissed Newcome's federal claims, its decision not to address her pendent state-law claims was a proper exercise of its discretion. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

**3.** In *Wilko* the Supreme Court considered the enforceability of an agreement between a broker and his customer requiring the customer to submit to binding arbitration any claims he might have against the broker under section 12 of the Securities Act of 1933, 15 U.S.C. § 77*l*. The Court held that the language of section 14 of the Act, 15 U.S.C. § 77n, which declares void any term requiring waiver of compliance with any provision of the Act or regulation of the Securities and Exchange Commission, rendered the arbitration provision unenforceable. 346 U.S. at 434–35, 74 S.Ct. at 186–87.

The district court's decision in the case we consider came shortly before the Supreme

right to pursue court actions grounded on these provisions could be waived by an arbitration agreement, that Newcome had agreed to arbitrate her claims, and, therefore, that her claims were subject to compulsory arbitration under the Federal Arbitration Act.

## II

■ Newcome challenges the district court's holding that her section 10(b) claim is subject to the arbitration provision in the Customer's Agreement. Two months after the district court dismissed Newcome's claims, however, the United States Supreme Court decided *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). In *McMahon* the Court held that agreements subjecting section 10(b) claims to binding arbitration are valid under the securities laws and enforceable under the Federal Arbitration Act. *Id.* 107 S.Ct. at 2343. After *McMahon* it is difficult to ascertain the basis on which Newcome would have us rule that arbitration provisions related to actions under section 10(b) are unenforceable. Suffice it to say that *McMahon* requires our affirmance of the district court's action dismissing the section 10(b) claim.

## III

■ The district court's holding that a right to a court action under section 17(a) could be waived by an arbitration agreement necessarily was preceded by its holding that section 17(a) gives rise to a private civil cause of action. Newcome challenges the district court's holding that her section 17(a) claim was subject to the arbitration

clause in the Customer's Agreement. The brokers contest the district court's initial determination that *Newman* required it to hold that section 17(a) authorizes a private cause of action.

District courts in this circuit generally have interpreted *Newman* as requiring them to hold that section 17(a) provides a private cause of action. *See, e.g., Shotto v. Laub*, 632 F.Supp. 516 (D.Md.1986); *Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 609 F.Supp. 1055 (D.Md.1985); *Reid v. Madison*, 438 F.Supp. 332 (E.D.Va.1977). One of our district courts, however, confronted by recent Supreme Court doctrine concerning implication of rights of action and other developments in securities law, differed on the question whether *Newman* mandated that it recognize a private right of action under section 17(a). *Allegheny & Western Energy Corp. v. Columbia Gas System, Inc.*, Fed.Sec.L.Rep. (CCH) ¶ 92,921 (S.D.W.Va.1986) [available on WESTLAW, 1986 WL13360]. This circuit itself has cast doubt on the continuing validity of *Newman*. *S.E.C. v. American Realty Trust*, 586 F.2d 1001, 1006–07 (4th Cir.1978) (noting in dicta that implication of a private right of action under section 17(a)(2) "would probably require some substantial disregard of the whole legislative scheme"). Because the resolution of this question logically precedes the resolution of the question of arbitrability and because it appears to be a source of some confusion within this circuit, we now reconsider the "private cause of action" issue [4] and overrule *Newman*, holding that section 17(a) implies no private cause of action.

Court held, in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), that the *Wilko* holding does not apply to claims under section 10(b) and that arbitration provisions dealing with claims under that section are enforceable.

**4.** The Supreme Court has on five occasions declined to rule on the section 17(a) question we consider today. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 304 n. 9, 105 S.Ct. 2622, 2625 n. 9, 86 L.Ed.2d 215 (1985); *Herman & Maclean v. Huddleston*, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *Aaron v. S.E.C.*, 446 U.S. 680, 689, 100 S.Ct.

1945, 1951, 64 L.Ed.2d 611 (1980); *International Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975). Any timidity we might have toward taking a position that the Supreme Court has specifically declined to address is overcome not only by the need to resolve the confusion that exists in this circuit, but by our realization that the Supreme Court may well have declined to act to permit fuller development of the issue in the circuit courts of appeals.

## IV

### A

In *Newman* we considered a section 17(a) action against Prior, a seller of oil and gas production interests. Among Prior's arguments on appeal, he contended that section 17(a) created no private cause of action. We stated without amplification, "[a]lthough there is authority to the contrary, this circuit is committed to the rule that § 17(a) supports a private damage claim for the fraudulent sale of a security." 518 F.2d at 99. When we decided *Newman* in 1975, the state of the law on the issue

was uncertain.[5] Those early decisions finding that Congress intended to imply a private cause of action when it enacted section 17(a), including our decision in *Newman*, were reached without benefit of the Supreme Court's seminal decision in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed. 2d 26 (1975), and its progeny, which have developed the analysis for determining whether a federal statute impliedly creates a private cause of action.[6] In the light of those cases and other developments in the securities laws, the decisions implying a private right of action have come under increasing criticism.[7]

**5.** *Compare Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 790 (8th Cir.1967) (section 17(a) provides no basis for a private action beyond that provided by section 12); *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757, 766–67 (D.Colo.1964) (no private action for violations of section 17(a) beyond that provided in section 12) *with Smith v. Jackson Tool & Die, Inc.*, 419 F.2d 152, 153 (5th Cir.1969) (remanding for consideration of, *inter alia*, private action under section 17(a)); *S.E.C. v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867, (2d Cir.) (Friendly, J., concurring) (suggesting that a private right of action be implied), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); *Fischman v. Raytheon Manufacturing Co.*, 188 F.2d 783, 787 n. 2 (2d Cir.1951) (discussing absence of procedural limitations on private actions under section 17(a)); *Dasho v. Susquehanna Corp.*, 380 F.2d 262, 267 (7th Cir.) (complaint stated a cause of action under sections 17(a) and 10(b)), *cert. denied*, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967); *Schaefer v. First National Bank*, 326 F.Supp. 1186, 1189 (N.D.Ill.1970) (recognizing private action under section 17(a)).

**6.** Our *Newman* opinion was filed on June 17, 1975. Coincidentally, *Cort* was filed on the same day.

**7.** The notion that Congress intended to imply a private right of action under section 17(a) has been subjected to continual criticism since the passage of the Act. *See* 3 L. Loss *Securities Regulation* 1784–87 (2d ed. 1961); Douglas & Bates, *The Federal Securities Act of 1933*, 43 Yale L.J. 171, 181–82 (1933); Landis, *Liability Sections of Securities Act*, 18 Am. Accountant 330, 331 (1933); Ruder, *Civil Liability Under Rule 10b–5: Judicial Revision of Legislative Intent?*, 57 Nw.U.L.Rev. 627, 654–57 (1963). Nonetheless, a statement by Judge Friendly in his concurring opinion in *S.E.C. v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867 (2d Cir.1968) (Friendly, J., concurring), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), supporting implication of a private right of action

gave rise to a line of cases holding that such a right exists.

One of the laudable factors of our system of decisional law is that it develops cautiously and incrementally. Sometimes, as happened in this discreet area of securities law, the pieces do not initially fit, so that developments in related areas of law undermine the basis for a prior holding. In *Texas Gulf Sulphur*, Judge Friendly stated:

> Once it has been established, however, that an aggrieved buyer has a private action under § 10(b) of the 1934 Act, there seemed little practical point in denying the existence of such an action under 17—with the important proviso that fraud, as distinct from mere negligence, must be alleged.

401 F.2d at 867 (Friendly, J., concurring). Judge Friendly's analysis that there was "little practical point" in denying a private cause of action was based on his evaluation that there was no significant difference between the elements of an action under section 10(b) and one under section 17(a). Most of the later opinions finding an implied cause of action under section 17(a) relied on Judge Friendly's statement without significant additional analysis. *See, e.g., Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 815 (9th Cir.1981); *Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979).

In 1980, however, the Supreme Court found a significant distinction between section 10(b) and section 17(a). In *Aaron v. S.E.C.*, 446 U.S. 680, 695–97, 100 S.Ct. 1945, 1955–56, 64 L.Ed.2d 611 (1980) (involving an action by the Securities Exchange Commission rather than by a private individual), the Supreme Court determined that, unlike actions under section 10b–5, which require scienter, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), actions under sections 17(a)(2) and 17(a)(3) can be based on mere negligence. This decision substantially altered the basis on which Judge Friendly's analysis rested. *See In re Washington*

In *Cort* the Supreme Court instructed that in determining whether private causes of action are to be implied from federal statutes which generally proscribe various types of conduct, four factors should be considered:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted).

The parameters of the *Cort* analysis have been drawn more tightly in the cases that have followed. In *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979), the Court emphasized that the first three criteria—the traditional indicia in legislative intent—are the primary factors to be considered because "[t]he central inquiry remains whether Congress intended to create, either explicitly or by implication, a private cause of action." 442 U.S. at 575, 99 S.Ct. at 2489. In *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245–46, 62 L.Ed.2d 146 (1979), the Court implied that the statutory language and legislative history are the decisive factors to be considered. The Court again stressed the importance of these two *Cort* factors in *Massachusetts Life Insurance Co. v. Russell*, stating that, although the first and fourth *Cort* factors were met, unless the second and third *Cort* factors created the necessary inference of congressional intent, " 'the essential predicate for implication of a private remedy simply does not exist.' " 473 U.S. 134, 145, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (quoting *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981)). In accordance with these directions, our analysis begins with the traditional indicia of legislative intent: the second and third *Cort* factors.[8]

### B

Section 17(a) of the 1933 Securities Act provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

*Public Power Supply System Securities Litigation*, 823 F.2d 1349, 1351–52 (9th Cir.1987) (en banc); *Landry v. All American Assurance Co.*, 688 F.2d 381, 385–87 (5th Cir.1982). His reasoning was undermined further by the Supreme Court's development of an analysis for finding an implied right of action that has restricted the circumstances under which a court should read an implied right of action into a statute. *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed. 2d 26 (1975).

These developments have led courts considering the issue in recent years to hold that no private right of action exists under section 17(a). *Currie v. Cayman Resources Corp.*, 835

F.2d 780 (11th Cir.1988); *Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349 (9th Cir.1987) (en banc) (rejecting *Mosher v. Kane*, 784 F.2d 1385 (9th Cir.1986), and *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808 (9th Cir.1981)); *Brannan v. Eisenstein*, 804 F.2d 1041 (8th Cir.1986); *Landry v. All American Assurance Co.*, 688 F.2d 381 (5th Cir. 1982). Judge Friendly himself commented that his earlier position "may be open to reexamination … in the light of the subsequent Supreme Court decisions…." *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985).

**8.** Since, as we explain in parts IIIB–D below, review of these factors reveals that implication of a private right of action would contravene Congress' intent, it is unnecessary for us to reach the remaining *Cort* factors. *Washington Public Power*, 823 F.2d at 1354; *see Russell*, 473 U.S. at 145, 105 S.Ct. at 3092.

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

Looking first to the language of section 17(a), we are struck by its singularly proscriptive language. Entitled "Fraudulent interstate transactions," it only characterizes the listed conduct as "unlawful"; as to enforcement, it is entirely silent. In contrast, section 11 of the Act, 15 U.S.C. § 77k, entitled "Civil liabilities on account of false registration statement," specifically creates a private cause of action for buyers of securities against persons involved in disseminating false registration statements. Similarly, section 12 of the Act, *id.* § 77*l*, entitled "Civil liabilities arising in connection with prospectuses and communications," also expressly provides a private civil right of action.

Even considering the language of section 17(a) in isolation from the remainder of the Act, the fact that "Congress, rather than drafting the legislation 'with an unmistakable focus on the benefited class,' instead has framed the statute simply as a general prohibition" militates against implication of a private right of action. *Universities Research Association v. Coutu*, 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 1954 n. 13, 60 L.Ed.2d 560 (1979)). Considering section 17(a) in connection with the sections of the Act that specifically deal with private civil liability, the inference that section 17(a) was not intended to create any such right is even more apparent. That Congress expressly provided for private causes of action in sections 11 and 12 is evidence that "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572, 99 S.Ct. 2479, 2487, 61 L.Ed.2d 82 (1979). It is true that "[t]he fact that other provisions of a complex statutory scheme create express remedies" alone does not mandate a private remedy not be implied. *Cannon*, 441 U.S. at 711, 99 S.Ct. at 1965. Here, however, the sections expressly containing the private remedies address the same type of conduct, benefit the same class, and were passed at the same time as section 17(a). Under these circumstances the inference is strong that Congress focused on the conduct addressed and the class it desired to protect and specifically set out the protections it desired to provide. *Landry v. All American Assurance Co.*, 688 F.2d 381, 390 n. 38 (5th Cir.1982) (quoting Steinberg, *Implied Private Rights of Action Under Federal Law*, 55 Notre Dame L.Rev. 33, 47–48 (1979)).

### C

The legislative history of the Act is similarly persuasive. It is generally agreed that the legislative history contains no direct evidence of congressional intent to create a cause of action under section 17(a).[9]

---

9. [T]here is unanimity among the commentators, including some who were in a peculiarly good position to know, that 17(a)(2) of the 1933 Act—indeed the whole of 17—was intended only to afford a basis for injunctive relief and, on a proper showing, for criminal liability, and was never believed to supplement the actions for damages provided by 11 and 12.

*Texas Gulf Sulphur*, 401 F.2d at 867 (Friendly, J., concurring) (citing Landis, *supra* note 7, at 331; Douglas and Bates, *supra* note 7, at 181–82; 3 L. Loss, *supra* note 7, at 1785–86).

A Ninth Circuit opinion recently stated, "[t]here is simply no indication, explicit or implicit, of legislative intent to create a private right of action under section 17(a)." *Washington Public Power*, 823 F.2d at 1355; *see also* Note, *Implied Civil Remedies under Section 17(a) of the Securities Act of 1933*, 53 B.U.L.Rev. 70, 96 (1973) [hereinafter Note, *Implied Civil Remedies* ]; Note, *A Plea for Consistency: Refusing Implication of a Private Right of Action under Section 17(a) of the Securities Act of 1933*, 62 N.Y.U.L.Rev. 116, 137–39 (1987) [hereinafter Note, *A Plea for Consistency* ]. *But cf. Washing-*

Instead, review of the legislative history suggests that Congress lacked any such intent. Section 17(a) was drafted as a compromise between differing provisions proposed by the Senate and the House of Representatives.[10] The section in the Senate's draft prohibiting the conduct addressed by section 17(a) included provisions for injunctive relief and criminal sanctions, but did not provide for civil liability. S. 875 73d Cong., 1st Sess. § 13, 77 Cong.Rec. 2979–82 (1933). The House's version of the provision, H.R. 5480, 73d. Cong., 1st Sess. § 16(a), 77 Cong.Rec. 2838 (1933), closely resembled the text of section 17(a) that eventually was adopted.[11] The House version of the section did not provide for any type of remedy at all, but merely proscribed fraudulent misstatements and omissions. The report accompanying the House version of the bill describes that section as providing that certain conduct was "made unlawful." H.R.Rep. No. 85, 73d Cong., 1st Sess. 24 (1933). In contrast, in reference to sections 11 and 12, the report states: "Sections 11 and 12 create and define the civil liabilities imposed by the act and the machinery for their enforcement...." *Id.* at 9. These aspects of the legislative history strongly suggest that from the beginning the drafters viewed section 17(a) as a general proscription to be enforced by criminal and injunctive action and viewed sections 11 and 12 as the sections containing *"the* civil liability provisions"* of the Act, *id.* (emphasis added). *See Texas Gulf Sulphur,* 401 F.2d at 867 (Friendly, J., concurring); Note, *A Plea for Consistency, supra* note 9, at 137–38.

ton Public Power, 823 F.2d at 1358–59 & n. 2 (Tang, J., dissenting) (agreeing that the legislative history "makes no mention whatsoever of civil liability," but arguing that Congress' later amendments of the securities law amount to a ratification of those cases that had implied a private right of action).

**10.** For a concise discussion of the drafting process that resulted in section 17(a), see Note, *A Plea for Consistency, supra* note 9, at 137–38.

**11.** Section 16(a) of the House bill provided:

It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of interstate transportation or

Further evidence of Congress' understanding of section 17(a) can be found in the legislative history of an amendment to the Act passed as part of the Securities Act of 1934. The amendment, offered by Senator Fletcher,[12] added subsections (c), (d), and (e) to section 17.

Senator Fletcher then asked to have a memorandum explaining the amendment printed in the Congressional Record. At the end of the memorandum the following statement appears: "It is to be noted that enforcement of the provisions of the new subsection is left to injunction, stop order, and criminal prosecution. No civil liability attaches for any violation thereof."

It is significant that this memorandum was offered by the Senator whose name was commonly associated with the 1934 Act. He was obviously well acquainted with the provisions of the 1934 Act and the 1933 Act. It seems clear that in Senator Fletcher's opinion no civil liability attached under Section 17 of the 1933 Act.

*Ruder, supra* note 7, at 656–67 (quoting 78 Cong.Rec. 8711–12 (1934)), *quoted in, Landry,* 688 F.2d at 389–90.

### D

The remaining indicator of legislative intent—whether implication of a private right of action would be consistent with the statutory scheme—militates even more strongly against implying such a right under section 17(a). The Act provides a comprehensive scheme regulating the securities markets, including a detailed procedure for en-

communication in commerce or by use of the mails (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of, or omission to state, a material fact, or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud upon the purchaser. H.R. 5480, 73d Cong., 1st Sess. § 16(a), 77 Cong. Rec. 2838 (1933).

**12.** Senator Fletcher's understanding of the Act's provisions is due special weight because of his important role in the development of the Securities Act of 1933, also known as the "Fletcher–Rayburn Securities Act of 1933."

forcement. *Washington Public Power,* 823 F.2d 1356. When section 17(a) is viewed against the background of the existing enforcement provisions, it becomes apparent that implication of a right of action under that section would interfere with the system of civil liabilities Congress expressly created.

"Sections 11 and 12 create and define the civil liabilities and the machinery for their enforcement" provided by the Act. H.R. Rep. No. 85, 73d Cong., 1st Sess. 9 (1933). These sections expressly provide a private right of action for much of the same conduct proscribed by section 17(a). *Landry,* 688 F.2d at 390; 3 L. Loss, *supra* note 7, at 1785. Like section 17(a), sections 11 and 12 reach misrepresentations that result from negligence; scienter is not an element of a violation. However, as the Supreme Court noted in *Ernst & Ernst,* 425 U.S. at 209, 96 S.Ct. at 1389, plaintiffs seeking recovery under these sections face "significant procedural restrictions."

> Section 11(e) of the 1933 Act, for example, authorizes the court to require a plaintiff bringing a suit under § 11, § 12(2), ... thereof to post a bond for costs, including attorneys' fees, and in specified circumstances to assess costs at the conclusion of the litigation. Section 13 specifies a statute of limitations of one year from the time the violation was or should have been discovered, in no event to exceed three years from the time of offer or sale, applicable to actions brought under § 11 [or] § 12(2)....

*Id.* at 209–10, 96 S.Ct. at 1388–89. In addition, both sections 11 and 12 contain due diligence defenses, and both preclude liability if the plaintiff knew of the falsehood of the representation. 15 U.S.C. §§ 77k(b)(3), 77*l*(2). In contrast to these carefully defined limitations on actions under sections 11 and 12, the Act contains no such provisions to limit a private civil cause of action brought under section 17(a).[13]

In the Securities Act of 1934, Congress provided another avenue for defrauded investors to seek relief: section 10(b), 15 U.S.C. § 78j(b). Section 10(b), as applied under rule 10b–5, 17 C.F.R. § 240.10b–5, also sanctions very much the same conduct as that prohibited by section 17(a). *See Ernst & Ernst,* 425 U.S. at 212 n. 32, 96 S.Ct. at 1390 n. 32. Actions under section 10(b) are free from the tight restrictions that limit plaintiffs under sections 11 and 12, but are restricted instead by a scienter requirement. *Ernst & Ernst,* 425 U.S. at 193, 96 S.Ct. at 1381; *see also* Hazen, *The Law of Securities Regulation* 506–11 (1985) (discussing limitations on section 10(b) actions that are not applicable to section 17(a) actions). The Supreme Court has held, in regard to Securities Exchange Commission actions under section 17(a), that scienter is an element of a violation of subsection 17(a)(1) but is not required for violation of subsections 17(a)(2) or (a)(3). *Aaron v. S.E.C.,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980).

Through careful structuring of the rules governing private enforcement of the securities laws, Congress has drafted a balanced system of remedies. Congress has provided a remedy for negligent misrepresentations but has limited that remedy with numerous procedural requirements. In contrast, a remedy is available that is not limited by such strict procedural requirements, but that remedy only is available for intentional misrepresentations.

The Supreme Court has been careful not to upset the balance Congress has created. In *Ernst & Ernst* the Court declined to permit recovery under section 10(b) to be based on negligent misrepresentation. 425 U.S. at 193, 96 S.Ct. at 1381. It concluded that, because section 10(b) is not subject to the strict limitations the Act imposes on sections 11 and 12, it could not be used as a vehicle for recovery on the basis of negligent misrepresentations without violating

---

**13.** In another section of the Act, Congress did provide a mechanism for the enforcement of the prohibitions in section 17(a). Section 20, 15 U.S.C. § 77t, permits the Securities Exchange Commission to sue for injunctive relief or to seek to institute criminal prosecution against

persons who violate the Act, and section 24, 15 U.S.C. § 77x, establishes fines and imprisonment for violators. By their terms, however, these sections apply only to actions by the Securities Exchange Commission or the Attorney General and not to private actions.

Congress' intent. *Id.* at 209–10, 96 S.Ct. at 1388–89. Allowing actions based on negligence to proceed free of the limitations imposed on actions under sections 11 and 12, the Court stated, would "nullify the effectiveness of the carefully drawn procedural restrictions on these express actions." *Id.* at 210, 96 S.Ct. at 1389.

The same reasoning applies to prohibit private causes of action under section 17(a). As numerous courts and commentators have noted,[14] permitting private actions to be brought under section 17(a) would allow plaintiffs to escape the limitations Congress specifically intended to apply to actions based on negligence.[15] Congress has drafted an integrated scheme addressing which rules will be enforced through injunctive relief or criminal sanctions and which by private civil actions. It has provided private actions both for negligent and fraudulent misconduct and has balanced carefully the burdens imposed on the parties in each context. The Supreme Court has refused to allow plaintiffs to escape the restrictions Congress has placed on actions under sections 11 and 12 by bringing actions based on negligence under section 10(b). In our view it would be equally improper to allow a similar end run around those restrictions to be made by utilizing section 17(a).

In view of the above, the judgment of the district court is affirmed.

AFFIRMED.

---

**14.** *E.g., Washington Public Power,* 823 F.2d at 1355–56; *Landry,* 688 F.2d at 390; *Allegheny & Western Energy Corp. v. Columbia Gas System, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 92,921 (S.D.W.Va. 1986); 3 L. Loss, *supra* note 7, at 1785–86; Note, *Implied Civil Remedies, supra* note 9, at 74–75, 96–97; Note, *A Plea for Consistency, supra* note 9, at 144–45.

**15.** Although it is true that actions under section 17(a)(1) require scienter, to find a congressional intention to permit a private right of action under sections 17(a)(1) but not under section 17(a)(2) and (a)(3) would require an extremely strained reading of the Act.