**BAKER, WATTS & COMPANY,**
**Plaintiff–Appellant,**

v.

**MILES & STOCKBRIDGE; Timothy R. Casgar, Defendants–Appellees.**

**BAKER, WATTS & COMPANY,**
**Plaintiff–Appellee,**

v.

**MILES & STOCKBRIDGE; Timothy R. Casgar, Defendants–Appellants.**

**Nos. 88–1134(L), 88–1135.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1989.

Decided June 7, 1989.

Rehearing and Rehearing In Banc Denied Aug. 7, 1989.

David Foxwell Albright (Harry M. Rifkin, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for Baker, Watts & Co.

Francis B. Burch, Jr. (David Clarke, Jr., Piper & Marbury, Baltimore, Md., on brief), for Miles & Stockbridge and Timothy R. Casgar.

Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, SPROUSE, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges, sitting en banc.*

WILKINSON, Circuit Judge:

Here we must determine whether a securities wrongdoer, held liable under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2), has an implied right to contribution or indemnification under that provision. We also must decide whether the federal securities laws preempt plaintiff's pendent statutory claims for contribution and indemnification, see Md. Corps. & Ass'ns Code Ann. § 11–101 et seq. (Maryland Securities Act), or plaintiff's pendent common law actions for legal malpractice, negligent misrepresentation, and breach of contract.

We hold that there is no implied right to contribution or indemnification under § 12(2) of the 1933 Act, and that the federal securities laws preempt plaintiff's pendent state claims to the extent they allow a right of action for indemnification. State common law or statutory actions for contribution are, however, not preempted.

We therefore affirm the district court's grant of summary judgment in favor of defendants on plaintiff's federal claims. We reverse the district court's grant of summary judgment in favor of defendants on plaintiff's Maryland Securities Act claims and vacate the district court's order remanding plaintiff's common law actions to the Circuit Court for Baltimore County. The district court is instructed to dismiss plaintiff's state statutory claim for indemnification with prejudice and to dismiss plaintiff's state statutory claim for contribution and common law actions without prejudice.[1]

## I.

In 1981, Baker, Watts & Company retained the law firm of Miles & Stockbridge, and one of its partners, Timothy R. Casgar, in connection with its private offering of limited partnership interests in Superior

---

* Judges WINTER and MURNAGHAN did not participate in the decision of this case.

1. This case initially was briefed and argued before a panel comprised of Judge Chapman, Judge Wilkinson, and Judge Wilkins. As the case draws into question the validity of a prior decision of this circuit, Wassel v. Eglowsky, 542 F.2d 1235 (4th Cir.1976), aff'g, 399 F.Supp. 1330 (D.Md.1975), the court convened en banc sua sponte to consider the question of whether Wassel should be overturned. An opportunity for supplemental briefing was afforded counsel and briefs were circulated to the full court.

Drilling Partners '81. Partners '81 was formed for the purpose of oil and gas exploration and Casgar drafted the limited partnership's confidential offering memorandum, which was essentially a securities prospectus. *See Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 361–62 (4th Cir.1986). The offering memorandum was issued on March 9, 1981, and thirty-one investors subsequently purchased interests in the limited partnership.

At the commencement of the offering period, Casgar owned 4.2 percent of the outstanding stock of Superior Petroleum Incorporated, the general partner of Partners '81. In addition, sixteen individuals affiliated with Baker, Watts owned 28 percent of Superior's outstanding stock. During the offering period, Casgar and these sixteen other stockholders negotiated with Superior's president over the sale of their interests in the general partner. These negotiations were not disclosed to the investors and the offering memorandum was not amended to reflect these communications. The offering period closed on June 1, 1981; Casgar and the other stockholders sold their interests to Superior's president on July 1, 1981.

In April of 1983, numerous investors filed suit in federal district court alleging, *inter alia*, that Baker, Watts violated § 12(2) of the 1933 Act, 15 U.S.C. § 77*l* (2), and § 11–703(a)(1)(ii) of the Maryland Securities Act, Md. Corps. & Ass'ns Code Ann. § 11–703(a)(1)(ii). A federal jury found that the failure to disclose the negotiations over the possible sale of the Superior stock was a material omission. Baker, Watts therefore violated federal and state securities laws and the district court entered judgment for the investors in the amount

of $1,916,314.17. Baker, Watts unsuccessfully appealed that judgment. *See Adalman*, 807 F.2d at 359.

On October 23, 1987, Baker, Watts brought suit against Miles & Stockbridge and Timothy Casgar in federal district court, asserting rights to indemnification and contribution under federal and state securities law. *See* 15 U.S.C. § 77*l* (2) and Md. Corps. & Ass'ns Code Ann. § 11–703(a)(1)(ii). Indemnification, of course, involves shifting the entire loss from one wrongdoer to another; contribution requires each wrongdoer to pay his proportionate—or *pro rata*—share of the adverse judgment. *See In re Olympia Brewing Co. Securities Litigation*, 674 F.Supp. 597, 607 (N.D.Ill.1987). The complaint also included Maryland common law claims for legal malpractice, negligent misrepresentation, and breach of contract. On the same day, Baker, Watts filed a similar action against Miles & Stockbridge and Casgar in the Circuit Court for Baltimore County.

On November 24, 1987, defendants removed plaintiff's state suit to federal court. The district court subsequently denied plaintiff's motion to remand and consolidated the two actions pursuant to Fed.R.Civ.P. 42(a). In June of 1988, after numerous motions, the district court held that plaintiff had no right to indemnification or contribution under either § 12(2) of the 1933 Act or § 11–703 of the Maryland Securities Act. The district court also held that the federal securities laws did not preempt plaintiff's common law claims for legal malpractice, negligent misrepresentation, and breach of contract and remanded them for resolution in state court.[2] *See Baker,*

---

**2.** Although actions which have been consolidated pursuant to Fed.R.Civ.P. 42(a) generally do not lose their separate identities, *see* 9 C. Wright & A. Miller, Federal Practice & Procedure § 2382 (1971), this case involves "identical actions" filed by plaintiff in federal and state court against defendants. *See Baker, Watts,* 690 F.Supp. at 432. It is therefore more appropriately viewed as a merger of plaintiff's state and federal suits into a single federal action. We "cannot ... discern any purposes of substance" for which these cases should retain their separate identities. *See Ivanov–McPhee v. Washington Nat. Ins. Co.,* 719 F.2d 927, 930 (7th Cir. 1983).

Plaintiff presented its federal and state claims to federal court and will not be prejudiced by a merger of these actions into a single federal suit. Rather than being remanded, plaintiff's common law claims should have been dismissed without prejudice subject to the preemptive scope of the federal securities laws discussed below.

*Watts & Co. v. Miles & Stockbridge*, 690 F.Supp. 431 (D.Md.1988).

Plaintiff appeals. Defendants cross-appeal the district court's decision to remand plaintiff's common law causes of action to state court. Defendants contend that these claims are preempted by the federal securities laws and should have been dismissed with prejudice.

## II.

■ As an initial matter, plaintiff correctly notes that the district court's holding that contribution and indemnification are not available under § 12(2) of the 1933 Act is contrary to our decision in *Wassel v. Eglowsky*, 542 F.2d 1235 (4th Cir.1976), *aff'g*, 399 F.Supp. 1330 (D.Md.1975). While the Supreme Court has not yet addressed this question, *Pinter v. Dahl*, —— U.S. ——, 108 S.Ct. 2063, 2069–70 n. 9, 100 L.Ed.2d 658 (1988), since *Wassel* was decided both the Supreme Court and this court have been reluctant to recognize private rights of action in the absence of express statutory direction. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (refusal to imply private right of action for damages in § 206 of the Investment Advisors Act of 1940); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (refusal to imply private right of action for damages under § 17(a) of the Securities Exchange Act of 1934); *Piper v. Chris–Craft Industries, Inc.* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) (refusal to imply private right of action for damages under § 14(e) of the 1934 Act in favor of a defeated tender offeror); *Newcome v. Esrey*, 862 F.2d 1099 (4th Cir.1988) (refusal to imply private right of action under § 17(a) of the 1933 Act). *See also Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (refusal to imply private right of action for contribution in Sherman Antitrust Act or Clayton Antitrust Act); *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (refusal to imply private right of action for contribution in Equal Pay Act of 1963 or Title VII of the Civil Rights Act of 1964). *See generally Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 145–48, 105 S.Ct. 3085, 3091–93, 87 L.Ed.2d 96 (1985) (refusal to imply private right of action for extracontractual damages in Employee Retirement Income Security Act of 1974); *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (refusal to imply private right of action in the Federal Water Pollution Control Act or the Marine Protection, Research, and Sanctuaries Act of 1972); *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981) (refusal to imply private right of action in § 10 of the Rivers and Harbors Appropriation Act of 1899); *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981) (refusal to imply private right of action for back wages in Davis–Bacon Act). Based on the clear import of these decisions, we hold that implied private rights of action for contribution and indemnification are not available under § 12(2) of the 1933 Act.

In determining whether a particular statute creates a cause of action, either expressly or by implication, a court's task is one of statutory construction. *See Transamerica Mortgage Advisors*, 444 U.S. at 15, 100 S.Ct. at 245. As with all cases of statutory construction, it is appropriate to begin with the statutory text. *See Universities Research Ass'n*, 450 U.S. at 772, 101 S.Ct. at 1462.

Section 12(2) of the Securities Act of 1933 provides in relevant part that:

[a]ny person who—

.  .  .  .  .

(2) offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ..., and who shall not sustain the burden of proof that he did not know, and in

the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing the security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l* (2).

There is thus an express private right of action under § 12(2) on the part of one who purchases a security pursuant to a misleading prospectus. *See Cook v. Avien, Inc.,* 573 F.2d 685 (1st Cir.1978). Plaintiff contends that this provision creates further rights to contribution and indemnification on the part of a securities wrongdoer. We disagree.

First, the statute itself does not create such remedies. Indeed, the statute's protection extends to investors who purchase securities based on misleading statements of material fact; it is not solicitous of unsuccessful defendants in a federal securities action. Plaintiff is therefore not " 'one of the class for whose *especial* benefit' " § 12(2) was enacted. *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (emphasis in original), *quoting Texas & Pacific R. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916). We thus hesitate to imply any private remedy in plaintiff's favor based on this provision. *See Universities Research Ass'n,* 450 U.S. at 771–72, 101 S.Ct. at 1461–62.

Second, the 1933 Act's legislative history and the structure of the federal securities laws do not suggest the recognition of implied rights of contribution and indemnification. There is no indication in the 1933 Act's legislative history, for example, of any congressional intent to create these remedies in § 12(2). *In re Olympia Brewing,* 674 F.Supp. at 612 & n. 14. This fact, combined with the plain language of the statute, "reinforces our decision not to find such ... right[s] of action implicit within the section." *Touche Ross,* 442 U.S. at 571, 99 S.Ct. at 2486, *citing Cort,* 422 U.S.

at 82–84, 95 S.Ct. at 2089–2091. *See also Texas Industries,* 451 U.S. at 639, 101 S.Ct. at 2066. Moreover, § 11(f) of the 1933 Act and §§ 9(e) and 18(b) of the Securities Exchange Act of 1934 expressly provide rights to contribution in specific circumstances. *See* 15 U.S.C. §§ 77k(f), 78i(e) & 78r(b). Congress knows how to define such a right of action in the federal securities laws, and we infer a lack of congressional intent to do so when the particular provision at issue is silent as to the existence of such a remedy. *See Texas Industries,* 451 U.S. at 640 n. 11, 101 S.Ct. at 2066 n. 11; *Touche Ross,* 442 U.S. at 572, 99 S.Ct. at 2487. *See also Newcome,* 862 F.2d at 1104.

Third, the underlying purpose of the 1933 Act is "regulatory rather than compensatory." *Laventhol, Krekstein, Horwath & Horwath v. Horwitch,* 637 F.2d 672, 676 (9th Cir.1980). Negligence in the preparation of a securities prospectus was made actionable under § 12(2) of the 1933 Act in order to promote careful adherence to the requirements of the statute. *See generally* 3 L. Loss, Securities Regulation 1829–36 (2d ed. 1961 & Supp.1969). In particular, a right of action for indemnification would frustrate the statute's goal of encouraging diligence and discouraging negligence in securities transactions. *See Laventhol,* 637 F.2d at 676. An unsuccessful defendant in a federal securities action therefore cannot "escape loss by shifting his entire responsibility to another party." *Heizer Corp. v. Ross,* 601 F.2d 330, 334 (7th Cir.1979); *Stowell v. Ted S. Finkel Inv. Services, Inc.,* 641 F.2d 323, 325 (5th Cir.1981).

It is unclear whether a federal right of action for contribution would promote the general purposes of the federal securities laws. Although some courts have stated that such a remedy may further the deterrent purposes of the 1933 and 1934 Acts, *see Heizer,* 601 F.2d at 332, much the same regulatory purpose can be ascribed to the antitrust laws under which no implied private right of action for contribution is recognized. *See Texas Industries,* 451 U.S. at 630, 101 S.Ct. at 2062. An even greater

deterrent effect may exist if a single securities wrongdoer such as Baker, Watts is held liable for the total adverse judgment. *See id.* at 636–37, 101 S.Ct. at 2064–65; Loewenstein, Implied Contribution Under the Federal Securities Laws: A Reassessment, 1982 Duke L.J. 543, 556–58. *See also* Easterbrook, Landes & Posner, Contribution Among Antitrust Defendants: A Legal and Economic Analysis, 23 J.L. & Econ. 331 (1980). Regardless of whether an implied right to contribution would advance or impair the purposes of the federal securities laws, such policy considerations cannot overcome the intent of Congress. *See Transamerica Mortgage Advisors,* 444 U.S. at 23–24, 100 S.Ct. at 249. In *Texas Industries,* 451 U.S. at 630, 101 S.Ct. at 2062, the Supreme Court undertook an extensive policy analysis of the value of contribution rights only to declare its irrelevance in the absence of congressional intent to create such a cause of action. When neither the statute nor its legislative history "reveals a congressional intent to create a private right of action for the benefit of the plaintiff, we need not carry the ... inquiry further." *Northwest Airlines,* 451 U.S. at 94 n. 31, 101 S.Ct. at 1582 n. 31, *citing Universities Research Ass'n,* 450 U.S. at 770–71 n. 21, 101 S.Ct. at 1461–62 n. 21; *Touche Ross,* 442 U.S. at 575–76, 99 S.Ct. at 2488–89; *id.* at 579–80, 99 S.Ct. at 2490–91 (Brennan, J., concurring).

■ Finally, plaintiff cannot claim rights to contribution or indemnification based on "federal common law." Federal courts do not have common law powers unless either a federal rule of decision is required " 'to protect uniquely federal interests,' " or Congress "has given the courts the power

to develop substantive law." *Texas Industries,* 451 U.S. at 640, 101 S.Ct. at 2067. Such circumstances, however, are " 'few and restricted,' " *id., citing Wheeldin v. Wheeler,* 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963), and neither category of federal common law power is implicated here. Rights of contribution or indemnification in favor of Baker, Watts certainly do not involve the rights or "duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority." *Id.* 451 U.S. at 642, 101 S.Ct. at 2068; *Northwest Airlines,* 451 U.S. at 95, 101 S.Ct. at 1582. Moreover, Congress has not vested in the federal courts the power to create a federal common law of securities regulation. A federal court's "authority to construe a statute is fundamentally different from the authority to fashion a new rule or to provide a new remedy which Congress has decided not to adopt." *Northwest Airlines,* 451 U.S. at 97, 101 S.Ct. at 1583. It is basic to our system of governance that federal courts not "fashion new remedies that might upset carefully considered legislative programs." *Id.*

### III.

■ In sum, we agree with the district court that Congress clearly did not provide private rights of action for contribution or indemnification in § 12(2).[3] The lack of a federal cause of action, however, does not necessarily preclude the existence of state-law remedies. Unless preempted, plaintiff may be entitled to recover based on Maryland statutory or common law.[4]

---

**3.** As a result, it is unnecessary to resolve the question whether defendants may be deemed "sellers" for purposes of § 12(2). *See generally Pinter,* 108 S.Ct. at 2075–82 (defining "seller" for purposes of § 12(1) of the 1933 Act). *See also Wilson v. Saintine Exploration & Drilling Corp.,* 872 F.2d 1124 (2d Cir.1989) (law firm whose participation in sale of securities was limited to mailing copy of private placement memorandum to purchaser at seller's request did not solicit sale and therefore could not be held liable as a seller under § 12(2) of the 1933 Act).

**4.** We reject plaintiff's assertion that. 28 U.S.C. § 1447(d) bars appellate review of the district court's remand order and that we therefore lack jurisdiction to address defendant's argument that the federal securities laws preempt plaintiff's common law claims. Review is precluded only if the district court based its remand decision on the grounds specified in 28 U.S.C. § 1447(c)—"that the case was removed improvidently and without jurisdiction." Here, plaintiff's pendent claims were remanded in the district court's discretion under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16

The question of preemption is also one of congressional intent. *See Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978). State law is preempted only when Congress acts to "occupy the field," or when the state claims at issue actually conflict with federal law. *See Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). Such a conflict exists when compliance with both state and federal law is impossible, *see Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or when state law obstructs congressional objectives. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977). State law is not preempted, however, " 'unless that was the clear and manifest purpose of Congress.' " *Id.* at 525, 97 S.Ct. at 1309, *quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

It is well-settled that federal law does not enjoy complete preemptive force in the field of securities. State securities laws exist in every state, the District of Columbia, and Puerto Rico, and, "far from preempting the field," Congress has expressly preserved the role of the states in securities regulation. L. Loss, *Fundamentals of Securities Regulation* 8 (2d ed. 1988). Section 16 of the 1933 Act, for example, provides that "[t]he rights and remedies provided by this subchapter shall be in addition to any and all other rights and remedies that may exist at law or in equity." 15 U.S.C. § 77p. *See also* 15 U.S.C. § 78bb(a) (1934 Act's authorization for concurrent state regulation in the securities field). The states enjoy broad powers to regulate such diverse subjects as: the registration of securities; the registration of broker-dealers, agents, and investment advisers; and fraud in the sale or purchase of securities and the rendering of invest-

ment advisory services. *See* L. Loss, *Fundamentals of Securities Regulation* 8–25 (2d ed. 1988). *See also* L. Loss & E. Cowett, *Blue Sky Law* 238–43 (1958) (summarizing the provisions of the Uniform Securities Act which forms the basis of the great majority of state securities regulations). Maryland therefore may provide additional rights and remedies which do not conflict with federal securities law. *See Underhill Associates, Inc. v. Bradshaw*, 674 F.2d 293, 295–96 (4th Cir.1982).

Although most state regulation supplements the goals of federal law, the question of whether a right to contribution is consistent with federal securities law is less clear. We think, however, that Congress did not remove it from the power of a state to conclude that a state right to contribution would further the regulatory purposes of the federal securities laws by holding all violators to account. Congress' failure to provide a federal contribution action in § 12(2) is not conclusive evidence that Congress intended to prohibit a state from doing so. The dangers of implying preemption may be as grave as those of implying a private cause of action. Our task in either case is to search for concrete evidence of congressional intent. *See Malone*, 435 U.S. at 497, 98 S.Ct. at 245; *Transamerica Mortgage Advisors*, 444 U.S. at 15, 100 S.Ct. at 245.

Here, plaintiff's Maryland contribution claims are not so antithetical to Congress' purposes in the 1933 and 1934 Acts that they are necessarily preempted by federal law. There is, for example, no express federal policy either for or against contribution under § 12(2). Moreover, liability under § 12(2) of the 1933 Act and § 11–703 of the Maryland Securities Act is predicated upon negligent misrepresentations; unlike an action under § 10(b) of the 1934 Act, scienter need not be an element of a § 12(2) or § 11–703 violation. *See New-*

L.Ed.2d 218 (1966). The district court did not believe that plaintiff's common law claims were improvidently removed and clearly recognized that it had the jurisdictional power to resolve them on the merits even after dismissal of the federal claims. *See Baker, Watts*, 690 F.Supp. at 437–38 & n. 9, *citing Fox v. Custis*, 712 F.2d 84,

89–90 (4th Cir.1980). The district court's decision was therefore not jurisdictional and we are not precluded from reviewing its remand order. *See Scott v. Machinists Automotive Trades District Lodge No. 190*, 827 F.2d 589, 592 (9th Cir. 1987).

*come,* 862 F.2d at 1106; *Shulton, Inc. v. Rubin,* 239 Md. 669, 212 A.2d 476 (1965). To hold state law preempted in this context might ironically preclude a negligent offender from seeking contribution under state law from an intentional wrongdoer. Finally, Baker, Watts hired defendants to provide legal services related to its private offering of limited partnership interests in Partners '81. Casgar and Miles & Stockbridge therefore "had an independent obligation to provide competent legal representation and to satisfy their contract." *Baker, Watts,* 690 F.Supp. at 437. This independent duty may reflect itself in a state-law action for contribution.

To hold, as defendants would have us do, that all state actions for contribution are preempted is to confer an absolute immunity under law for those whose violations of the securities statutes may be significant. While the stemming of spin-off securities litigation of little apparent public value may make complete preemption of contribution actions desirable as a matter of policy, we are reluctant to take such a portentous step in the absence of clear direction from Congress. *See Jones,* 430 U.S. at 525, 97 S.Ct. at 1309. We perceive no such signal here. In short, although we intimate no view as to the merits of plaintiff's pendent state claims, we hold that these Maryland statutory and common law actions do not stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 526, 97 S.Ct. at 1310. They are therefore not preempted by federal law to the extent they allow a right to contribution in this case.

As we have noted, we do not reach the question whether defendants may be deemed "sellers" for purposes of § 12(2) liability. *See supra* note 3. If they are not, a legitimate question arises as to how a party may be liable for contribution under state law if that party is not strictly a seller under § 12. At first blush, holding a non-seller liable for contribution may appear to violate the principle that contribution is only available among joint tortfeasors. This problem, however, is one of semantics rather than substance. The sub-

stantive question is whether a state may still decide that any number of state duties were violated in preparing a securities prospectus irrespective of whether one would be a seller in a strict § 12 sense under *Pinter,* 108 S.Ct. at 2075–82. As we have explained, Congress did not intend to preempt the states from defining wrongdoing by other parties related to the sale of securities.

To the extent, however, that plaintiff's pendent state actions are claims for indemnification, they must fail as preempted by federal law. Unlike contribution, Congress has not provided a right to indemnification in the federal securities laws under any circumstances. *Heizer,* 601 F.2d at 334–35. The legislative histories of the 1933 and 1934 Acts are silent as to the existence of any such remedy. *See* L. Loss, *Fundamentals of Securities Regulation* 1035–36 (2d ed. 1988). Moreover, it would run counter to the basic policy of the federal securities laws to allow a securities wrongdoer such as Baker, Watts to shift its entire responsibility for federal violations on the basis of a collateral state action for indemnification. *See Globus v. Law Research Service, Inc.,* 418 F.2d 1276, 1288 (2d Cir.1969).

Although a right to indemnification may not be preempted in each and every circumstance, we reject plaintiff's assertion that the federal policy against indemnification extends only to intentional wrongdoing. The goal of the 1933 and 1934 Acts is preventive as well as remedial, *Laventhol,* 637 F.2d at 676, and "[d]enying indemnification encourages the reasonable care required by the federal securities provisions." *In re Olympia Brewing,* 674 F.Supp. at 611. Here, plaintiff's wrongdoing has been plainly adjudicated, and a state action for indemnification would frustrate the basic enforcement of federal securities law. Plaintiff's § 11–703 claim for indemnification is therefore preempted and should be dismissed with prejudice. We leave it to the state courts to classify plaintiff's pendent common law actions. If they are *de facto* claims for indemnification, they too are preempted.

## IV.

 Finally, we must determine whether the district court properly exercised its discretion under *Gibbs,* 383 U.S. at 715, 86 S.Ct. at 1130, when it resolved plaintiff's Maryland Securities Act claim for contribution on the merits. Although a federal court has the power to resolve state claims even after all federal claims have been dismissed from the action, *see Rosado v. Wyman,* 397 U.S. 397, 402–05, 90 S.Ct. 1207, 1212–14, 25 L.Ed.2d 442 (1970), a decision to remand pendent state claims, or dismiss them without prejudice, is particularly appropriate where they involve genuinely unsettled questions of state law. We therefore hold that the district court erred in resolving plaintiff's statutory claim on the merits.

Plaintiff asserts that Maryland law expressly provides rights to contribution in this case. Plaintiff contends, for example, that defendants served as agents who materially aided the underlying securities transaction and are therefore liable for contribution pursuant to § 11–703 of the Maryland Securities Act. *See* Md.Corps. & Ass'ns Code Ann. §§ 11–703(c)(1) & (2). Although "agent" is defined by statute, *see* Md.Corps. & Ass'ns Code Ann. § 11–101(b)(1), we are without state court guidance as to the proper interpretation of this term. The district court concluded that defendants were not agents for purposes of the Act because attorneys are not required to register with the Maryland Securities Commissioner. *See generally* Md. Corps. & Ass'ns Code Ann. § 11–402. There is, however, no state court authority addressing whether an attorney can be an agent for purposes of § 11–703. Indeed, Maryland courts have had few opportunities to construe the Act. *See* Comment, Maryland Statutory and Common Law Remedies for Misrepresentation in Securities Transactions, 13 U.Balt.L.Rev. 574, 592–93 & n. 144 (1984). Plaintiff's statutory remedy for contribution should therefore be dismissed without prejudice.

## V.

In sum, § 12(2) of the 1933 Act does not create private rights of action for contribution or indemnification. In addition, federal law preempts plaintiff's Maryland statutory and common law claims to the extent they provide a right of action for indemnification. We thus affirm the district court's judgment in favor of defendants on plaintiff's § 12(2) claims. We reverse the district court's judgment in favor of defendants based on the Maryland Securities Act and vacate the district court's order remanding plaintiff's common law claims to state court. The district court is instructed to dismiss plaintiff's state statutory claim for indemnification with prejudice; all other pendent state claims are to be dismissed without prejudice.

The judgment of the district court is hereby

AFFIRMED IN PART; REVERSED IN PART.