**In re SUNRISE SECURITIES LITIGATION.**

**This Document Relates to All Actions.**

**MDL No. 655.**

United States District Court,
E.D. Pennsylvania.

May 22, 1992.

basis for inferring non-use. (Defendant's Reply Brief at pp. 5–6).

Berger & Montague, P.C., Philadelphia, Pa., Greenfield & Chimicles, Haverford, Pa., Squire, Sanders & Dempsey, Washington, D.C., for plaintiff.

Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM

O'NEILL, District Judge.

### I. *Background*

Two groups of claims relating to Sunrise Savings and Loan Association of Florida have been consolidated for pretrial proceedings in this multidistrict litigation: claims brought under the Securities Exchange Act of 1934 and under state common law asserted by a class of Sunrise shareholders (the "Securities case") and claims of breaches of fiduciary duties asserted by the Federal Deposit Insurance Corporation as manager of the FSLIC Resolution Fund[1] (the "Fiduciary Duty case").[2] Many of the defendants have filed cross-claims against other defendants and counterclaims to the claims asserted by the plaintiffs.

On May 29, 1990, I entered an Order approving a settlement agreement between

---

1. FSLIC was dissolved by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L.No. 101–73, § 401, 103 Stat. 183, 354 (1989). By Order entered on February 1, 1990, FDIC was substituted for FSLIC in this litigation.

2. There was also a third group of claims, asserted by former depositors in Sunrise (the "Depositors case"). On November 9, 1989, I granted summary judgment in favor of the defendants in that case and dismissed plaintiffs' complaint, 108 B.R. 471. On October 17, 1990, the Court of Appeals for the Third Circuit affirmed that ruling. *See In re Sunrise Secur. Litigation,* 916 F.2d 874 (3d Cir.1990).

defendants Blank, Rome, Comisky & McCauley, Sunrise's law firm, Michael D. Foxman, M. Kalman Gitomer, Kenneth Treadwell and Edward E. Fitzgerald, Jr. and the plaintiffs in the Securities and Fiduciary Duty cases.[3] The Order provided for the dismissal with prejudice of all contribution claims against Blank, Rome on the basis that plaintiffs will reduce, by the amount of Blank, Rome's proportional fault, if any, as determined at trial, any judgment that plaintiffs obtain against the non-settling defendants who are found to be joint tortfeasors with Blank, Rome. *See In re Sunrise Securities Litigation*, 131 F.R.D. 450 (E.D.Pa.1990).

Presently before the Court is Blank, Rome's motion to dismiss all the cross-claims asserted by the non-settling defendants against Blank, Rome.[4] Extensive briefs were filed and I held an oral argument on the motion on November 4, 1991. The parties submitted additional briefs in March, 1992 on the question of what law is applicable to the FDIC's claims in the Fiduciary Duty case.

For the reasons that follow, I will grant the motion in part and deny it in part.

## II. *Discussion*

### A. Standard of Review

▮▮▮▮ In deciding a motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6), I accept the well-pleaded factual allegations of the cross-claimants' amended pleadings as true.[5] A claim should not be dismissed

---

**3.** Foxman, Gitomer, Treadwell and Fitzgerald were Blank, Rome partners who were named as individual defendants to the litigation. For purposes of this memorandum, the term "Blank, Rome" should be understood to mean the firm and these four named individuals.

**4.** The non-settling defendants are: Alan B. Keiser, Nathaniel J. Jacobs, Robert Logsdon, Lake Lytal, Robert T. Siemon, George Greenberg, Frank J. Shaw, Jr., Bernard Simonson, Joseph Taber, Deloitte, Touche ("Deloitte", formerly Deloitte, Haskins & Sells), J. Randolph Black, Blake & Associates, David L. Devaney, Lynn S. Felps, Frederick Gruher, Kenneth R. Howard, Laddie D. Howard, Teresa L. Ingles, Robert C. Jacoby, Kenneth S. Koushel, Caldwell C. Robinson, Jack M. Shurack, Thomas Skubal, Curtis Walker and Joseph Zambruski.

for failure to state a claim unless it appears beyond a doubt that the non-moving party can prove no set of facts in support of its allegations which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Marshall–Silver Construction Co. v. Mendel*, 894 F.2d 593, 595 (3d Cir.1990). In making this determination, the court must construe the pleading in the light most favorable to the non-moving party. *Budinsky v. Pennsylvania Dept. of Environmental Resources*, 819 F.2d 418, 421 (3d Cir.1987).

### B. Blank Rome's Motion to Dismiss Cross–Claims

In the Fiduciary Duty case, defendants Black, Blake & Associates, Devaney, Felps, Gruher, Kenneth Howard, Laddie Howard, Hyman, Ingles, Jacoby, Koushel, Robinson, Shurack, Skubal, Walker, Zambruski and the Outside Directors have cross-claimed for contribution and implied indemnity; Deloitte has cross-claimed alleging fraud, negligent misrepresentation, tortious interference, and for contribution and implied indemnity; and Taber has cross-claimed alleging intentional misrepresentation, negligence (including but not limited to negligent misrepresentation and professional malpractice), breach of contract, violation of Section 10(b) of the 1934 Securities Exchange Act and Rule 10b–5, and for contribution and implied indemnity.

For the purposes of this memorandum, defendants Keiser, Jacobs, Logsdon, Lytal, Siemon, Greenberg, Shaw, Simonson and Taber will be referred to as "the Outside Directors." They are the former Sunrise outside directors, with the exception of Taber, who was a Sunrise officer. The "certain non-settling defendants" (all of the non-settling defendants with the exception of Deloitte, which filed separate briefs) made the same classification in their response to the motion.

**5.** Although motions to dismiss pursuant to Fed. R.Civ.P. Rule 12(b)(6) are most commonly directed against a plaintiff's complaint, the motion is available to test a claim for relief in any pleading, whether it be a plaintiff's complaint, a counterclaim, cross-claim or third-party claim. 5A Wright & Miller, *Federal Practice and Procedure*, § 1356, at 296 (West 1990).

In the Securities case, defendants Blake & Associates and Ingles have cross-claimed for contribution and implied indemnity; Jacoby has cross-claimed for contribution; and the Outside Directors and Shaw have cross-claimed alleging intentional misrepresentation, negligence (including, but not limited to negligent misrepresentation and professional malpractice), breach of contract, violation of section 10(b) of the 1934 Act and Rule 10b–5, and for contribution and implied indemnity.

For the reasons set forth below, I conclude that the contribution claims should be dismissed because they are barred by my Order dated May 29, 1990. I conclude further that the implied indemnity claims in the Securities case should be dismissed because there is no right to implied indemnity under the federal securities laws. I also conclude that the breach of contract claims should be dismissed because Blank, Rome and the non-settling defendants making the claims are not in privity. The negligence claims should be dismissed for similar reasons. The cross-claims asserting securities fraud under Section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934 should be dismissed only to the extent that they are barred by the statute of limitations. All of the other claims have been properly asserted and will not be dismissed.

### 1. *Pleading Deficiencies*

Blank, Rome argues that the cross-claims alleging fraud should be dismissed because they contain pleading deficiencies—specifically that fraud is alleged by hypothetical pleading, that the claims were not pleaded with particularity and because the pleadings do not properly state the elements of the fraud claim.

### a. Hypothetical pleading

Blank, Rome asserts that the cross-claims alleging fraud must be dismissed because they attempt to incorporate the indictment and related bill of particulars in *United States v. Jacoby,* Crim. No. 87–6034

(S.D.Fla.) by hypothetical pleading, in violation of Fed.R.Civ.P. Rules 10(c) and 8(e)(2).

Rule 10(c) states:

Adoption by Reference; Exhibits. Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.

Rule 8(e)(2) states:

A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses.

Rule 8(e)(2) may be relied upon by any party. 5 Wright & Miller § 1282, at 529. Claims asserted hypothetically need not be consistent with the defenses and denials raised in a party's answer. *Id.* For example, Wright and Miller cite a conspiracy action in which defendants denied that a conspiracy existed and then hypothetically asserted in a counterclaim that if in fact a conspiracy did exist plaintiffs had participated in it and had injured defendants. *Id.,* citing *Charles Rubenstein, Inc. v. Columbia Pictures Corp.,* 14 F.R.D. 401 (D.Minn. 1953).

Blank, Rome concedes that hypothetical pleading is permitted, Supplemental Memorandum of Blank, Rome, Comisky & McCauley in Support of its Motion to Dismiss All Cross–Claims, at 36, but contends that hypothetical pleading should not be used to allege fraud, at least where there has been adequate opportunity to determine the facts, because fraud may not be alleged merely on information and belief. In addition, Blank, Rome argues that hypothetical pleading is not permitted unless the pleader "honestly is in doubt about the factual background or legal theories supporting his claim." *Id.* at 37, citing 5 Wright & Miller at § 1282. It thus asks that those portions of the cross claims that attempt to incorporate the indictment and bill of particulars by hypothetical pleading be stricken. Blank, Rome Supplemental Memorandum, at 38.[6]

---

**6.** Blank, Rome has withdrawn the contention in its initial memorandum that the Outside Di-

Blank, Rome has provided no authority to support its contention that hypothetical pleading should not be used to allege fraud. Rule 8(e)(2) and the authority cited interpreting it demonstrate that hypothetical pleading is permitted thereunder. Hypothetical pleading is not permitted only when the pleader is in doubt about the factual background or legal theories supporting his claim. Here, the Outside Directors and Deloitte have denied that the sham loans were made but pleaded hypothetically that if the loans were in fact made Blank, Rome concealed them from the Directors and Deloitte. Nothing in the pleadings suggests that the cross-claimants doubt the veracity of their claims.

Additionally, while Blank, Rome contends that fraud may not be alleged merely on information and belief, the allegations of the cross-claimants are not information and belief allegations; they are if-then, or hypothetical, pleadings. The claims are detailed and are structured as they are merely to reflect the Directors' decision not to admit facts they cannot admit and which might lead to liability they do not believe they have.

#### b. Particularity

Blank, Rome argues further that the fraud claims should be dismissed because they were not pleaded with adequate facts to support certain conclusions or because they were not pleaded with particularity in violation of Fed.R.Civ.P. Rule 9(b).[7]

Rule 9(b) requires a claimant to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the claimant acted upon it to his damage. *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 284 (3d Cir.1992). The Court of Appeals for the Third Circuit has held that "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Industry Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984).

Despite these requirements, courts should "respect the 'general simplicity and flexibility' of the Federal Rules of Civil Procedure." *Shapiro*, 964 F.2d at 284, quoting *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir. 1983). Thus, the standard of pleading under Rule 9(b) is a generous one. *Odesser v. Continental Bank*, 676 F.Supp. 1305, 1314 (E.D.Pa.1987).

Focusing exclusively on the particularity requirement is "too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Craftmatic Secur. Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989). Instead, under *Seville* the fraud allegations must withstand a case-specific evaluation, made with a view to the policies to be served by Rule 9(b). *Odesser*, 676 F.Supp. at 1314. In addition, "[w]hen the transactions are numerous and take place over an extended period of time, less specificity is required ... [T]he rule should not be applied with such draconian strictness as to undermine the liberal spirit of the Federal Rules of Civil Procedure." *In re Catanella and E.F. Hutton and Co., Secur. Litigation*, 583 F.Supp. 1388, 1398 (E.D.Pa.1984).

In this case the Outside Directors have alleged fraud with the particularity required by Rule 9(b). Construing Rule 9(b) liberally and considering that the alleged transactions are numerous and took place over an extended period of time, I

---

rectors and Deloitte have violated Fed.R.Civ.P. Rule 10(c) because a pleading may not incorporate allegations of a pleading in another case. *See* Blank, Rome Supplemental Memorandum, at 36.

**7.** Fed.R.Civ.P. Rule 9(b) states:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

conclude that the allegations have put Blank, Rome on notice of the misconduct it is said to have committed. In addition to the pleadings, the Directors have provided a summary of the allegations. *See* Certain Non–Settling Defendants' Response, Appendix 2.

Similarly, Deloitte's allegations of fraud satisfy Rule 9(b). Deloitte's cross-claim alleges specific misrepresentations based upon, among other things, the allegations mentioned in the amended complaint, the bill of particulars and the indictment.[8] These allegations put Blank, Rome on notice of the misconduct it is said to have committed.

### c. Elements of fraud

Rule 9(b) also requires the pleadings to contain identification of the elements of the fraud claim. *Craftmatic*, 890 F.2d at 645.

Blank, Rome asserts that the claims of the Outside Directors fail to satisfy this aspect of Rule 9(b) because the claims fail to identify the alleged misrepresentations, fail to allege adequate facts to support the scienter, or intent, requirement, and fail to demonstrate that the Directors justifiably relied on the alleged misrepresentations.

### i. Misrepresentations

■ Rule 9(b) requires a party to plead a false statement or omission of material fact. However, Rule 9(b) "does not require nor make legitimate the pleading of detailed evidentiary matter." *Denny v. Carey*, 72 F.R.D. 574, 578 (E.D.Pa.1976). A complaint is not deficient for failing to state every detail that might be a proper subject for interrogatories. *In re Catanella & E.F. Hutton*, 583 F.Supp. at 1398.

Blank, Rome contends that the Outside Directors' attempts to provide details of the fraudulent conduct alleged are inade-quate. Memorandum in Support of Motion to Dismiss Cross–Claims Against Blank, Rome, Comisky & McCauley, at 23. I conclude, however, that the Directors have met the requirements of Rule 9(b) in terms of pleading the element of misrepresentation.

### ii. Scienter

■ To succeed on a claim of fraud, a party must prove "that the defendant acted with scienter, i.e., with intent to deceive, manipulate, or defraud." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983); *In re Phillips Petroleum Secur. Litigation*, 881 F.2d 1236, 1244 (3d Cir.1989). To state a claim under Rule 9(b), "malice, intent, knowledge and other condition of mind of a person may be averred generally." There is no problem of insufficient particularity under Rule 9(b) since it expressly authorizes "knowledge" to be averred generally. *Denny*, 72 F.R.D. at 580.

Thus, despite Blank, Rome's contentions that Rule 9(b) requires dismissal of a claim where parties with extensive knowledge of the facts fail to plead even one example of relevant knowledge on the part of the opposing party, the allegations of scienter in this case, which allege that Blank, Rome misled the Outside Directors "intentionally, with reckless disregard for the truth or falsity," are sufficient to satisfy Rule 9(b).

### 2. Contribution

Blank, Rome asserts that the claims against it seeking contribution have been barred by my Order dated May 29, 1990 in which I approved the settlement between Blank, Rome and the plaintiffs in both cases. The Outside Directors have conceded this point. Deloitte's claims also will be dismissed.[9]

---

**8.** Much of Blank, Rome's argument that the cross-claims do not satisfy Rule 9(b)'s pleading requirements is based upon its prior argument that incorporation of the indictment is improper. As I conclude that such incorporation is permitted, the allegations of misrepresentation in the Indictment are sufficient to preclude dismissal of the fraud claims under Rule 9(b).

**9.** Deloitte argues that it is premature to dismiss specific parts of the parties' cross-claims. Specifically, it points to Count IV of its cross-claims, which is labelled "Contribution and Indemnity." It asserts that if the plaintiffs are correct in their assertion that Deloitte is not entitled to contribution (as provided by the settlement agreement) because it is not jointly and severally liable with Blank, Rome, the claim is

### 3. Implied Indemnity Claims

#### a. Fiduciary Duty Case

##### i. Choice of law

As a threshold matter, I must decide what law to apply in determining whether the non-settling defendants have stated a claim against Blank, Rome for implied indemnity in the Fiduciary Duty case. In order to make such a determination, it is helpful to decide what law is applicable to the FDIC's claims in that case.

Courts in several jurisdictions have held that suits brought by the FDIC in its corporate capacity arise under the laws of the United States; thus these courts have applied federal law to such claims. *See FDIC v. Blue Rock Shopping Center*, 766 F.2d 744, 747 (3d Cir.1985), citing *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 455–56, 62 S.Ct. 676, 678, 86 L.Ed. 956 (1942); *Gaff v. FDIC*, 919 F.2d 384, 388 (6th Cir.1990); *Trigo v. FDIC*, 847 F.2d 1499, 1502 (11th Cir.1988); *FDIC v. Ashley*, 749 F.Supp. 1065, 1067 (D.Kan.1990). While federal law supplies the rule of decision in these circumstances, I must decide whether to turn to federal common law or state law in order to give content to the federal rule. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *Blue Rock*, 766 F.2d at 747.

In *Kimbell Foods*, the Supreme Court held that "controversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules." *Kimbell Foods*, 440 U.S. at 728, 99 S.Ct. at 1458. The Court stated that "when there is little need for a nationally uniform body of law, state law may be incorporated as the federal rule of decision." *Id. See also In re Sunrise*, 916 F.2d at 879–882.

The Court identified three factors for courts to consider in determining whether to fashion a nationwide federal rule or to adopt state law: (1) whether there is a substantial need for a nationally uniform federal rule; (2) whether application of state law would frustrate specific objectives of the federal program; and (3) whether application of a federal rule would disrupt commercial relationships predicated on state law. *Kimbell Foods*, 440 U.S. at 728–729, 99 S.Ct. at 1458–1459. Applying these factors, I conclude that federal common law should control the FDIC's claims in the Fiduciary Duty case.[10]

The first *Kimbell Foods* factor is whether there is a substantial need for a national uniform rule. It is well settled that there is a strong federal interest in uniform regulation of federal savings and loan associations. *See FSLIC v. Kidwell*, 716 F.Supp. 1315, 1317 (N.D.Cal.1989), *vacated without opinion, in part*, 937 F.2d 612 (9th Cir. 1991) (vacating lower court opinion as to sanctions award only). Although Sunrise was not a federally chartered association, there is a federal interest in uniform regulation of state-chartered associations

---

not truly one for contribution and should not be dismissed.

If Deloitte is found liable to plaintiffs but not jointly and severally liable with Blank, Rome, however, then Deloitte has not stated a claim upon which relief can be granted, as implied indemnity would not be available under those circumstances. *See* Section II(B)(3).

I conclude that insofar as Deloitte's claims are labelled contribution they should be dismissed.

**10.** I note that in an earlier decision in this case, in which I approved the settlement between Blank, Rome and the plaintiffs, I agreed with all of the parties that a uniform federal rule was desirable in forming a settlement bar rule. My reasoning was based on the fact that the rule adopted would "affect 'key substantive rights of the defendants under the securities laws;' adop-

tion of existing state statutes would produce disparate results and would 'thwart the overall federal regulatory scheme,' and adoption of state law would encourage forum shopping and spawn wasteful litigation over the applicable state law." *In re Sunrise*, 698 F.Supp. 1256 at 1257–1258 (E.D.Pa.1988), quoting *Nelson v. Bennett*, 662 F.Supp. 1324, 1335 (E.D.Cal.1987).

Of course, the settlement bar decision did not deal with indemnity claims between defendants. Further, in the present discussion I am not dealing with the securities laws; nor is forum shopping a concern. However, as I was in my prior ruling, I am concerned here as to whether adoption of state law would thwart an overall regulatory scheme and require litigation, otherwise unnecessary, over which state's law is applicable.

where, like Sunrise, they are federally insured and therefore subject to the same laws governing federal associations. *See First Hawaiian Bank v. Alexander*, 558 F.Supp. 1128, 1130 (D.Hawaii 1983); *see also Kidwell*, 716 F.Supp. at 1317.

In addition, application of a national rule would avoid the possibility of different rules applying to directors and officers of a bank who are located in different states. For example, Sunrise had officers located in states other than Florida (e.g. Texas) and made loans in states other than Florida (e.g. Texas, Arizona, South Carolina). *See* Second Supplemental Memorandum of Blank, Rome in Support of its Motion to Dismiss All Cross–Claims, at 7.

Moreover, adopting state law as the federal rule of decision would require that the FDIC expend its resources to litigate choice of law questions for the claims against the officer and director defendants as well as other defendants, such as attorneys or accountants. An effort should be made to control litigation costs when it is possible to do so without improperly affecting the rights of the parties. Adopting a uniform national rule would help to achieve such a goal.

The second *Kimbell Foods* factor is whether application of state law would frustrate the specific objectives of a federal program. While it cannot be disputed that the laws governing the FDIC are forward-looking laws seeking to forestall insolvency, those laws also relate to remedial and recovery measures pursued by that agency after bank and savings and loan insolvencies. In addition, federal regulation of savings and loans is pervasive. *FSLIC v. Sajovich*, 642 F.Supp. 74, 77 (C.D.Cal.1986). Differing state interpretations of the federal banking rules and regulations could interfere with the objectives of those regulations. Indeed, as the District Court held in *Sajovich*, "Given that the issue of liability for fiduciary breach depends, in large part, on an interpretation of these federally pre-

scribed obligations, there exist questions of federal law...." *Id.*

The third *Kimbell Foods* factor is whether federal law would disrupt commercial relationships predicated on state law. The primary commercial expectations created by a state-chartered savings and loan association involve deposits taken and loans made. *See Gaff*, 919 F.2d at 389. Parties cannot reasonably expect to carry on normal commercial relationships after a savings and loan association has failed; moreover, it is doubtful that the eventuality of bank failure plays a significant role in the ordinary commercial expectations of the parties. *FDIC v. Bank of Boulder*, 911 F.2d 1466, 1476 (10th Cir.1990); *see also Blue Rock*, 766 F.2d at 748 (where dispute involves ability of a co-maker to a note to raise a defense of impairment of collateral against FDIC "[t]here is no reason to believe that ... any of the parties predicated their behavior upon state law").

Accordingly, after an analysis of the *Kimbell Foods* factors, I conclude that federal common law should supply the federal rule of decision in the Fiduciary Duty case.[11]

Because I conclude that federal law supplies the rule of decision for the FDIC's claims in the Fiduciary Duty case and federal common law gives content to the rule, I conclude further that federal law should supply the rule for implied indemnity claims in the Fiduciary Duty case.

As stated above, however, I must decide whether to turn to federal common law or state law in order to give content to the federal rule. To do so I will look once more to the factors annunciated in *Kimbell Foods*. Applying those factors, I conclude that federal common law should give content to the rule of decision for the indemnity claims as well.

■ As with the FDIC's Fiduciary Duty claims, there is a substantial need for a national uniform rule regarding the indemnity cross-claims. Although the FDIC is

---

**11.** I do not need to decide at this time the source of the federal common law to be applied

in the Fiduciary Duty case.

not party to the indemnity claims, it still will be affected by the rule that is applied. For example, because the FDIC's main claims arise under and are given content by federal law, any liability to FDIC imposed on the non-settling defendants would result from their violation of duties owed under federal law.

The application of different states' laws would also have the effect of escalating the FDIC's litigation costs, as the FDIC would have to litigate choice of law issues in each instance where it brings claims on behalf of a failed savings and loan association.[12] In addition, as Blank, Rome asserts, the application of different states' laws possibly could make settlement between the FDIC and less than all defendants in these complex cases more difficult, since defendants in those states which allow claims for indemnity would not want to settle and remain exposed to indemnity claims.

Application of state law to the cross-claims also would frustrate the specific objectives of a federal program. As with the first *Kimbell Foods* factor, application of state law to cross-claims for indemnity could affect the FDIC's ability to settle actions. Further, while it cannot be disputed that the laws governing the FDIC are forward-looking laws seeking to forestall insolvency, the laws also relate to remedial and recovery measures pursued by that agency after bank and savings and loan insolvencies.

Moreover, if state law were to give content to the federal indemnification rule in FDIC cases, different states' laws would be applicable to different parties, thereby allowing some defendants to obtain indemnification which would be denied to others. Thus, looking to state law to give content to the federal rule potentially could undermine the deterrent effect of the FDIC's prosecution of actions against those responsible for bank failures. The non-settling defendants argue that in this case application of state law would have no deterrent effect on the FDIC's prosecution of

wrongdoers because in Florida and Pennsylvania indemnification is not allowed where a party has been adjudged a wrongdoer. However, in determining whether to formulate a uniform national rule the law of a particular state is not controlling; I must decide whether the laws of any state could have such a deterrent effect.

Applying federal common law as the rule of decision also satisfies the third *Kimbell Foods* factor, whether federal law would disrupt commercial relationships predicated on state law. As stated above, parties cannot reasonably expect to carry on normal commercial relationships after an insured bank has failed, and it is doubtful that the eventuality of bank failure plays a significant role in the ordinary commercial expectations of the parties. *Bank of Boulder*, 911 F.2d at 1476; *see also Blue Rock*, 766 F.2d at 748.

Accordingly, I conclude that federal common law should supply the federal rule of decision in the Fiduciary Duty case.

### ii. Federal common law

When federal common law applies, "federal courts are free to use the traditional common-law technique of decision and to draw upon all the sources of the common law...." *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. at 472, 62 S.Ct. at 686. Of course, one such source is federal case law. *See FDIC v. Timbalier Towing Co.*, 497 F.Supp. 912, 919 (N.D.Ohio 1980). In the case at bar, the parties have not cited, nor has independent research found, any federal common law precedent regarding the availability of implied indemnity in an action for breach of fiduciary duty.

Another source of the common law is state law. *See FDIC v. Ashley*, 749 F.Supp. at 1067. However, choosing the laws of the appropriate states, here Florida and Pennsylvania, would undermine my conclusion that uniformity of decision for this type of case is preferable.

---

**12.** For example, despite the fact that the FDIC is not a party to the cross-claims being asserted against Blank, Rome, it submitted several briefs on the issues currently before the Court and as a result incurred significant litigation costs.

The Restatements of Law, which represent comprehensive statements of general principles adhered to by the various states, can also serve as a source of the federal common law. *See Harris v. Polskie Linie Lotnicze,* 820 F.2d 1000, 1003 (9th Cir.1987) (Restatement 2d of Conflict of Laws is source of general choice-of-law principles and appropriate starting point for applying federal common law); *Cochran v. AT & T Technologies, Inc.,* 753 F.Supp. 284, 288–89 (E.D.Mo.1991) (relying on Restatement 2d of Contracts in applying federal common law). In fact, in *White v. Johns–Manville Corp.,* 662 F.2d 243, 249 (4th Cir.1981), the Court of Appeals for the Fourth Circuit cited the Restatement of Restitution (1937) in stating that, under certain circumstances, an implied indemnity action is recognized in admiralty. In the instant case, I too will turn to the Restatement of Restitution as the source for the principles to be used in applying the federal common law.

Section 76 of the Restatement of Restitution states that a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other is entitled to indemnity from the other, unless the payer is barred by the wrongful nature of his conduct. In other words, this theory of indemnity—that the indemnitor is guilty of active, primary or original fault while the indemnitee is guilty only of passive, secondary or implied fault—applies a restitutionary principle to the situation where one person discharges a liability that has been imposed on him by operation of law, but which because of another's "primary fault" should have been discharged by the other. *White,* 662 F.2d at 249.

■ Where the indemnitee's liability is merely constructive, vicarious or derivative, the burden for the entire loss may be shifted to the indemnitor whose actual fault caused the injury. *Id.,* citing Restatement of Restitution §§ 94, 95, 96; Restatement of Restitution § 87 (indemnity available in instances of vicarious liability).

■ Indemnity also may be allowed where the indemnitee was induced to act by an actual misrepresentation of the indemnitor on which the indemnitee relied or where he acted pursuant to directions of the indemnitor which the indemnitee reasonably believed to be lawful. *White,* 662 F.2d at 249; Restatement of Restitution §§ 89, 90.

■ Accordingly, while the non-settling defendants will have no right to implied indemnity if they are found to be actively at fault, there are several factual scenarios in which the non-settling defendants may be entitled to indemnity. Blank, Rome and the FDIC assert that the FDIC has stated that it is pursuing only fault-based claims against the non-settling defendants, and that it is not pursuing any passive fault claims (such as vicarious, constructive, derivative, or technical fault) against the Outside Directors or Deloitte. The FDIC also has stated, however, that it reserves its right to change its theory of the case and add such claims. Transcript of Oral Argument, at 28–29.[13] Therefore, it is premature to rule out the possibility that a jury will find that the liability of the non-settling defendants is vicarious, constructive, derivative, or technical, under which circumstances they might be entitled to indemnity.

I conclude that under federal common law, as defined by the Restatement of Restitution (1937), the non-settling defendants' indemnity claims are claims for which relief may be granted.

b. Securities case

*i. Federal securities claims*

The shareholders' federal securities claims are brought under Section 10(b) of the Securities Exchange Act of 1934 and under Rule 10b–5. The parties agree that

---

**13.** I also note that on April 9, 1991, counsel for the non-settling defendants sent a letter to counsel for plaintiffs asking them to sign a stipulation confirming that they "are not pursuing and will not pursue, any claim against any person that is based, in whole or in part, on vicarious, constructive, derivative or similar liability not dependent on that person's own acts or admissions constituting fault or breach of duty." Certain non-settling defendants' Exhibit 2. Plaintiffs do not deny that they declined to sign the proposal.

federal law governs the right to implied indemnity under the federal securities laws.[14]

While the Court of Appeals for the Third Circuit has not ruled on this question, courts generally have recognized that no right to indemnification exists under Section 10(b). *See Baker, Watts & Co. v. Miles & Stockbridge,* 876 F.2d 1101 (4th Cir.1989); *King v. Gibbs,* 876 F.2d 1275 (7th Cir.1989); *Stowell v. Ted S. Finkel Invest. Services, Inc.,* 641 F.2d 323, 325 (5th Cir. Unit B 1981); *In re Towner Petroleum Company Secur. Litigation,* 1987 WL 6746, slip op. at *1, 1987 U.S.Dist. LEXIS 1113, slip op. at *4 (E.D.Pa.1987); *In re New York City Shoes Secur. Litigation,* 1988 WL 80125, 1988 U.S.Dist. LEXIS 7283 (E.D.Pa.1988); *Baker v. BP America, Inc.,* 749 F.Supp. 840, 845 (N.D.Ohio 1990); *Globus, Inc. v. Law Research Service, Inc.,* 318 F.Supp. 955, 958 (S.D.N.Y.1970), *aff'd,* 442 F.2d 1346 (2d Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971).

The non-settling defendants assert that the reason that courts have not allowed indemnification is because the availability of that remedy to a securities wrongdoer would frustrate and defeat the purposes of the Securities Acts by permitting him to shift the entire responsibility for, and many of the financial consequences of, his illegal behavior to another party. *See In re Towner Petroleum,* 1987 WL 6746, at *1, 1987 U.S.Dist. LEXIS 1113, at *5. The non-settling defendants argue that because they have not been adjudicated wrongdoers such a rationale is not controlling as to them. In support of their contention, they cite *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962 (E.D.N.Y.1988), and *Greenwald v. American Medcare Corp.,* 666 F.Supp. 489 (S.D.N.Y.1987). In *Bernstein,* the defendant had settled the plaintiffs' Section 10(b) claims against it and alleged

in its cross-claim that it was entirely without fault and that it was entitled to indemnity. *Bernstein,* 702 F.Supp. at 984. Similarly, in *Greenwald,* the cross-claimant settled plaintiffs' federal securities fraud claims against him and cross-claimed for indemnity. *Greenwald,* 666 F.Supp. at 493.

In both cases, the district courts denied motions to dismiss, stating that whether indemnification would be available depended upon questions of fact to be determined at trial. *Bernstein,* 702 F.Supp. at 984; *Greenwald,* 666 F.Supp. at 493.

In holding that there is no right to an indemnity under the federal securities laws, however, the Courts of Appeals for the Fourth and Seventh Circuits have concluded that there is no right to indemnity, not because allowance of the remedy would defeat the purposes of the Acts but because Congress did not intend to create such a right when it passed the Securities Act of 1933 and the Securities Exchange Act of 1934 and because such a right did not exist at federal common law.

In fact, in *King v. Gibbs,* the Court of Appeals for the Seventh Circuit held that there was no right to implied indemnity for liability under Section 10(b) of the Securities Exchange Act of 1934 in a situation where the party seeking indemnification had not been adjudicated a wrongdoer. Although the Court was unable to rely on the argument that allowing indemnification would undermine the deterrence function of the Security Exchange Act, it still concluded that there was no cause of action for implied indemnity.

The Court found that "an implied right to indemnification would not simply be an adjunct to the Section 10(b) and Rule 10b–5 cause of action but rather would serve as a source of independent substantive rights." *King v. Gibbs,* 876 F.2d, at 1280. In order to determine whether to imply a private

---

**14.** In *Sola Elec. Co. v. Jefferson Elec. Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 173–174, 87 L.Ed. 165 (1942), the Supreme Court stated the applicable general rule:

When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though

left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted. To the federal statute and policy, conflicting state law and policy must yield.

cause of action from statutory language, the Court relied on the factors set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[15] Focusing on the second of the four *Cort* factors, whether the legislature intended to create a private cause of action, the Court concluded that no private action should be implied because "there is nothing in the language of Section 10(b) or Rule 10b–5 from which the right to indemnification can be inferred" and there is no indication "in the extensive legislative history surrounding the 1934 Act that Congress intended that indemnification be available under the statute." *King v. Gibbs,* 876 F.2d at 1281.

The Court then stated that the only other possible federal source of the right is the federal common law. *Id.,* at 1282. The Court held, however, that "there is no compass within federal common law for the recognition of a right to indemnification in the context of a securities case" where a federal rule of decision is not necessary to protect uniquely federal interests and where Congress has not given the courts the power to develop substantive law. *Id.*

The Court of Appeals for the Fourth Circuit held that Section 12(2) of the Securities Act of 1933 did not expressly create an indemnification remedy, nor did the Act's legislative history suggest the recognition of rights of indemnification. *Baker, Watts,* 876 F.2d at 1105. "Congress knows how to define such a right of action in the federal securities laws, and we infer a lack of congressional intent to do so when the particular provision at issue is silent as to the existence of such a remedy." *Id.* The Court also stated that the underlying purpose of the 1933 Act is " 'regulatory rather than compensatory' " and that "a right of

action for indemnification would frustrate the statute's goal of encouraging diligence and discouraging negligence in securities transactions." *Id.,* quoting *Laventhol, Krekstein, Horwath & Horwath v. Horwitch,* 637 F.2d 672, 676 (9th Cir.1980).

As did the Court of Appeals for the Seventh Circuit, the Court of Appeals for the Fourth Circuit held that the plaintiff could not claim a right to indemnification based on federal common law:

> Federal courts do not have common law powers unless either a federal rule of decision is required "to protect uniquely federal interests," or Congress "has given the courts the power to develop substantive law." Such circumstances, however, are "few and restricted," and neither category of federal common law power is implicated here. Rights of ... indemnification in favor of Baker, Watts certainly do not involve the rights or "duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority." Moreover, Congress has not vested in the federal courts the power to create a federal common law of securities regulation.

*Id.,* at 1106, quoting *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 642, 101 S.Ct. 2061, 2066, 2067, 68 L.Ed.2d 500 (1981).

■ I am persuaded by the reasoning of these Courts that Congress did not intend to create a right of indemnification when it passed Section 10(b) of the Securities Exchange Act of 1934 and that the right does not exist at federal common law.[16] I conclude therefore that the indem-

**15.** In *Cort,* the Supreme Court stated that the relevant factors in determining whether a private remedy is implicit in a statute are: (1) whether the party is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the party; and (4) whether the cause of action is one traditionally relegated to state law, in an area basically the concern of the States, so that

it would be inappropriate to infer a cause of action based solely on federal law. *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088.

**16.** In my view, this conclusion is not inconsistent with my holding that under the federal common law implied indemnity is allowed in the Fiduciary Duty case. In the Securities case, the underlying action is governed by the Securities Exchange Act of 1934. Congressional silence regarding implied indemnity in an area where Congress has legislated extensively precludes the creation of a federal common law

nity cross-claims of the non-settling defendants with respect to the federal securities claims brought by the shareholder plaintiffs should be dismissed.

### ii. Pendent state law claims

The parties agree that state law, and specifically Florida law, applies to the question whether indemnification is allowed under the pendent state law fraud claims asserted by the class.[17]

### (1) State law

 Under Florida law, indemnity is limited to those situations where "the *whole* fault is in the one against whom indemnity is sought." *Houdaille Industries, Inc. v. Edwards*, 374 So.2d 490, 493 (Fla.1979) (emphasis in original). Indemnity "shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable." *Id.*, citing *Mims Crane Service, Inc. v. Insley Manufacturing Corp.*, 226 So.2d 836 (Fla.Dist.Ct.App.1969). Thus, the Florida Supreme Court held that "indemnity can only be applied where the liability of the person seeking indemnity is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed." *Houdaille*, 374 So.2d at 493.

 Under Florida law, a party entitled to indemnity for judgment entered against it also is entitled to recover attorneys' fees and court costs. *Maseda v. Honda Motor Co.*, 861 F.2d 1248 (11th Cir. 1988) (applying Florida law to indemnity claim); *Carlson Corporation/Southeast v. School Bd. of Seminole County*, 778 F.Supp. 518, 521 (M.D.Fla.1991) (applying Florida law); *Insurance Co. of North America v. King*, 340 So.2d 1175 (Fla.Dist. Ct.App.1976). A party may be entitled to indemnity for attorneys' fees and costs even if it has been exonerated of liability to the plaintiff at trial. *Pender v. Skillcraft Industries, Inc.*, 358 So.2d 45 (Fla.Dist.Ct. App.1978).[18] Moreover, the Court of Appeals for the Eleventh Circuit has held that under Florida law a defendant who establishes its right to indemnity against a co-defendant is entitled to recover attorneys' fees and costs even if the plaintiff voluntarily dismisses from the lawsuit the defendant seeking indemnification. *Maseda*, 861 F.2d at 1257.

 The parties have not cited any cases regarding whether Florida law allows a party to recover indemnity where the prospective indemnitee settles with the plaintiff absent an admission of fault, nor has independent research revealed any. In light of *Pender* and *Maseda*, however, I predict that the Florida Supreme Court would hold that the non-settling defendants would be entitled to assert an indemnity claim for attorneys' fees and costs if they settle their lawsuit with the plaintiffs.[19]

cause of action. In addition, federal courts only have common law powers where Congress gives the courts power to develop substantive law or where a federal rule of decision is required to protect uniquely federal interests. The uniquely federal interests are created in the Fiduciary Duty case because the FDIC is a party to the suit; in the Securities case, the FDIC is not a party.

17. The parties have noted that in the case of defendant Simonson Pennsylvania law might apply. However, Pennsylvania law with respect to implied indemnity is similar to Florida law to the extent that indemnity is allowed only where the party seeking indemnity is held to be without fault. *See Sirianni v. Nugent Bros., Inc.*, 509 Pa. 564, 506 A.2d 868 (1986).

18. In *Pender,* the Court limited its holding by stating that some nexus between the indemnitor and indemnitee is required to support an implied contract theory of indemnification. The court found that the privity of contract which existed between the indemnitor and indemnitee in that case constituted such a nexus.

19. Where there is no authoritative decision by the state's highest court, federal courts are required to predict how the state's highest court would decide were it confronted with the issue. *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.1980). The role of the federal court in such an instance "is not to form or create state law but to decide the case as [it believes] it would have been decided by the state's highest court." *State Farm Mutual Automobile Insurance Company v. Armstrong*, 949 F.2d 99, 101 (3d Cir.1991).

Accordingly, the indemnity claims asserted with respect to the pendent state law fraud causes of action asserted by the class will not be dismissed.[20]

#### 4. De facto indemnity

Blank, Rome argues that the state law tort and contract claims of the Outside Directors and Deloitte are preempted to the extent that they are de facto indemnity claims; it contends that allowing such claims would be contrary to federal policy against indemnification. Blank, Rome explains that by de facto indemnity it means "a claim bearing the label of a different cause of action, but seeking the same damages as would be sought in an implied indemnity claim." Blank, Rome Supplemental Memorandum, at 27.

In support of its argument, Blank, Rome cites *Baker, Watts,* in which the Court stated that de facto claims for indemnification are preempted by federal law precluding indemnification. *Baker, Watts,* 876 F.2d at 1108. The *Baker, Watts* Court did not define, however, what constitutes a de facto indemnity claim.

In *In re Cenco Inc. Secur. Litigation,* 642 F.Supp. 539, 541 (N.D.Ill.1986), the district court stated that "there is a plain and common legal distinction between recovery via indemnification and via damages for a tort." The Court explained:

> Recovery by indemnity between two defendants who have allegedly committed a tort on a third person is not the same thing as recovery because one defendant also committed a tort on the other.... Indemnity shifts responsibility to a third person from one person to another, and arises "in cases where equities supported it." ... The gist of [the auditor's] fraud claim is not that it is more equitable that [the corporation] pay for [the auditor's] loss to the class [plaintiffs], but that [the corporation] has committed a tort on [the

auditor], and must pay damages for this, damages which happen to encompass the settlement payment. That this element of damage overlaps what [the auditor] maybe could have recovered through indemnity does not make it indemnity.

*Id.,* at 541–42, quoting *Prosser and Keeton on the Law of Torts* (1984). The Court thus allowed the defendant auditor who had settled with the plaintiffs to pursue common law claims for fraud and breach of contract against the corporation.

This case is similar to *In re Cenco.* The damages that the non-settling defendants seek for their tort and contract claims are similar, although not identical, to the damages that they seek for their indemnification claims. Such an overlap does not necessarily transform the claims into claims for implied indemnity. The state law cross-claims which the Outside Directors and Deloitte have asserted against Blank, Rome are based upon duties that it allegedly owed to the outside Directors, not duties that they and Blank, Rome owed to the plaintiffs. Specifically, the various non-settling defendants allege that Blank, Rome is liable to them for intentional misrepresentation, negligence, breach of contract, and tortious interference. They claim that they were directly wronged by Blank, Rome.

Because I conclude that the state law claims alleged by the non-settling defendants are not de facto indemnity claims, they are not preempted by federal law.

#### 5. State law fraud claims

In addition to its assertion that the cross-claims alleging fraud are not well-pleaded, Blank, Rome argues that the common law fraud claims should be dismissed because they do not demonstrate that the cross-claimants justifiably relied on the alleged misrepresentations.[21]

---

**20.** I note that in *Baker, Watts,* 876 F.2d at 1108, the Court held that indemnity under the state law fraud claims would be preempted by federal policy against indemnification in the case of a "securities wrongdoer." *Id.* Here, however, the parties have not raised this issue.

**21.** In the section of its Supplemental Memorandum dealing with the Directors' securities fraud claims brought under section 10(b), Blank, Rome suggests in passing that the Directors' state law fraud claims are barred by the Florida statute of limitations. I do not decide this ques-

██ The following elements are necessary to state a fraud claim under Florida common law: (1) a false statement or omission concerning a material fact; (2) the representor's knowledge that the representation or omission is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation. *Johnson v. Davis*, 480 So.2d 625 (Fla. 1985); *Adams v. G.D. Searle & Co.*, 576 So.2d 728 (Fla.Dist.Ct.App.1991); *Wallis v. South Florida Savings Bank*, 574 So.2d 1108 (Fla.Dist.Ct.App.1990).

### a. Justifiable Reliance

██ To succeed under a common law fraud claim, the plaintiff must prove that he or she relied upon the misrepresentation. Under Florida law, a plaintiff must also demonstrate that his or her reliance was justified. *FDIC v. High Tech Medical Systems, Inc.*, 574 So.2d 1121 (Fla.Dist.Ct. App.1991) (without evidence of justifiable reliance, no actionable fraud).

██ Blank, Rome makes two arguments in support of its contention that the Outside Directors did not justifiably rely on the alleged misrepresentations of Blank, Rome. First, it argues that the Outside Directors have not pleaded "an example of a single fact fraudulently withheld from the Board by Blank, Rome" that was not susceptible of discovery in the exercise of reasonable care. Blank, Rome Memorandum, at 51. Blank, Rome asserts that the Directors were charged with knowledge of everything the books and records of Sunrise would have revealed because there is no allegation by the Directors that the closing documents were not available or that Blank, Rome interfered with the Directors' ability to inquire of the bank's officers as to the terms upon which loans closed. *Id.* In other words, Blank, Rome argues that the Outside Directors cannot allege that they justifiably relied on Blank, Rome because they did not inquire of the bank's officers as to the terms upon which loans closed or examine the closing documents. *Id.*

By asserting that the Directors did not make the proper inquiries *into* Sunrise's books and records, Blank, Rome presents several factual questions which are not appropriate to decide on a motion to dismiss. Whether the Directors had knowledge or should have had knowledge of the matters allegedly misrepresented or withheld is an issue more properly dealt with after discovery has taken place and not on the basis of the pleadings alone.

Second, Blank, Rome claims that the Directors cannot adequately plead justifiable reliance because either the Directors properly and without fault relied on Blank, Rome and therefore will have no liability to plaintiffs or their reliance on Blank, Rome was unreasonable. Blank, Rome Supplemental Memorandum, at 42. This contention also is without merit. Blank, Rome apparently is treating the Directors' intentional misrepresentation claim as a claim for indemnity in that Blank, Rome would not be liable to the Directors if the Directors are not liable to the plaintiffs. As I concluded above, however, the Directors' claim of intentional misrepresentation asserts that Blank, Rome committed a wrong as to them. Therefore, the Directors may allege intentional misrepresentation even if a jury determines that they properly relied on the alleged misrepresentations of Blank, Rome and as a result have no liability to plaintiffs.

Accordingly, I conclude that the Directors' claims for intentional misrepresentation will not be dismissed.

### 6. *Breach of Contract Claims*

Blank, Rome also asserts that the claims of the Outside Directors and officers for breach of contract must be dismissed because Blank, Rome performed its professional duties for the benefit of Sunrise and not Sunrise's directors, officers or auditors, and because the directors and officers were not intended beneficiaries of Blank, Rome's work for the savings and loan association. The parties agree that Florida law controls the breach of contract claims.

tion because the issue has not yet been briefed sufficiently.

An attorney for a corporation is counsel to the corporation, not to the corporation's officers and directors. *Lane v. Chowning,* 610 F.2d 1385, 1389 (8th Cir. 1979); *Avianca, Inc. v. Corriea,* 705 F.Supp. 666, 680 n. 4 (D.D.C.1989); *Stratton Group Ltd. v. Sprayregen,* 466 F.Supp. 1180, 1184–85 (S.D.N.Y.1979). At most, the directors and officers of a corporation might be third party beneficiaries to a corporation's contracts for professional services. *Mulligan v. Wallace,* 349 So.2d 745 (Fla.Dist.Ct.App.), *cert. denied,* 354 So.2d 983 (Fla.1977); *see also Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 602–03 (6th Cir. 1988); *Wilson–Rich v. don Aux Assocs., Inc.,* 524 F.Supp. 1226, 1232 (S.D.N.Y. 1981).

Florida law recognizes the right of a third party beneficiary to sue under a contract, but "that right is limited to those situations where the provisions of the contract clearly show an intention primarily and directly to benefit the individual bringing suit or to a class of persons to which he claims to belong as a third party beneficiary." *Security Mut. Cas. Co. v. Pacura,* 402 So.2d 1266, 1267 (Fla.Dist.Ct.App.1981), citing *Wright v. Terry,* 23 Fla. 160, 2 So. 6 (1887). One who is an incidental beneficiary to a contract cannot sue for breach of the contract. *Health Application Systems, Inc. v. Hartford Life & Accident Ins. Co.,* 381 So.2d 294, 298 (Fla.Dist.Ct. App.1980).

Citing *First American Title Insurance Co. v. First Title Service Co.,* 457 So.2d 467 (Fla.1984), the Outside Directors contend that they were intended beneficiaries of Blank, Rome's contract with Sunrise. In that case, the Florida Supreme Court held that where an abstracter knows, or should know, that his customer is securing the abstract for the use of a prospective purchaser, and the prospect purchases the land relying on the abstract, the abstracter's duty of care runs not only to his customer but to the purchaser as well. *Id.,* at 473. The Court stated that

> when an abstract is prepared in the knowledge or under conditions in which an abstracter should reasonably expect that the employer is to provide it to third persons for purposes of inducing those persons to rely on the abstract ... the abstracter's contractual duty to perform the service skillfully and diligently runs to the benefit of such known third parties.

*Id.,* at 472.

The Outside Directors also cite *First Florida Bank, N.A. v. Max Mitchell & Co.,* 558 So.2d 9 (Fla.1990), in which the Florida Supreme Court held that an accounting firm could be held liable for negligence not only to those with whom it is in privity but also to persons "whom [it] knows and intends will rely on [its] opinion, or whom [it] knows [its] client intends will so rely." *Id.,* at 15.

The Directors argue that based upon this standard, which they assert is more up-to-date than *Pacura* and represents the current trend in Florida law, they are intended beneficiaries of the Blank, Rome–Sunrise contract. They contend that they have alleged that Blank, Rome knew that they would directly rely upon its advice and intended that they would so rely, and that, in fact, they did directly rely upon Blank, Rome's legal advice.

The Directors' reliance upon *First American Title Insurance Co.* and *First Florida Bank* is misplaced, however. These cases involve liability in tort, not in contract.[22] Despite the Directors' contentions to the contrary, I am not persuaded that the Florida Supreme Court would ignore this distinction and overrule its longstanding precedent requiring an intent to benefit directly the party claiming to be a third party beneficiary.

Accordingly, I conclude that the Outside Directors' breach of contract claims should

22. Moreover, in *First Florida Bank,* the Florida Supreme Court recognized that in the absence of privity the liability of a lawyer is limited to a situation where it was the apparent intent of the client to benefit a third party. In this case, the pleadings do not allege that Sunrise intended that Blank, Rome's services were to benefit the directors.

be dismissed.[23]

### 7. *Negligence Claims*

Blank, Rome also contends that the claims against it for negligence—specifically, negligent misrepresentation and malpractice—must be dismissed because as attorneys for Sunrise, Blank, Rome cannot be liable in negligence to third parties.

■ The Florida Supreme Court has held that, except in certain limited circumstances, lack of privity bars an action in negligence by a third party against an attorney acting in his professional capacity for a client. *Moss v. Zafiris, Inc.*, 524 So.2d 1010, 1011 (Fla.1988); *Angel, Cohen, and Rogovin v. Oberon Investments, N.V.*, 512 So.2d 192, 194 (Fla.1987). In Florida, this rule of privity has been relaxed only when it was the apparent intent of the client to benefit a third party, such as in the preparation of a will. *Id.* *See De Maris v. Asti*, 426 So.2d 1153 (Fla.Dist.Ct. App.1983); *cf. Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983) (under Pennsylvania law, mere negligence of attorney toward someone other than client is not actionable, except in case of named legatee of will who may bring suit as intended beneficiary where legatee is specifically named in will as recipient of all or part of estate).

The Outside Directors again rely on *First Florida Bank* in support of their contention that claims by third parties against professionals, including lawyers and law firms, should be allowed "where it was clear from the circumstances that the third party was relying on the services of the professional and that the professional was aware of that reliance." Certain Non–Settling Defendants' Response, at 79. Indeed, in *First Florida Bank*, the Florida Supreme Court held that in the case of accountants, "liability should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely." *First Florida Bank*, 558 So.2d at 15. In its decision, the Court adopted the standard of Section 552 of Restatement 2d of Torts (1976) dealing with negligent misrepresentation, which applies not only to accountants but to all persons engaged in business or transactions in which they have a pecuniary interest.[24]

In *First Florida Bank*, however, the Court did not extend its holding to cover all professionals. In fact, despite acknowledging that the doctrine of privity has undergone "substantial erosion" in Florida, the Court stated explicitly that "the liability of a lawyer in the absence of privity has been limited to cases where the legal service negligently performed was apparently initiated by the lawyer's client to benefit a third party, such as in the drafting of a will." *Id.*, at 13, citing *Angel*, 512 So.2d at 194.

■ Thus, the decisions of the Florida Supreme Court in *Angel* and *Moss* remain binding when dealing with the liability of attorneys to third parties. The *Angel* standard is more limited in terms of the scope of an attorney's liability for negligence

---

**23.** In his cross-claims defendant Simonson asserts that he was a client of Blank, Rome. *See* Appendix to Memorandum in Support of Motion To Dismiss Cross–Claims Against Blank, Rome, Comisky & McCauley, at 115. I conclude that this allegation is not sufficiently well-pleaded because it is conclusory and does not state any facts in support of the claim. Accordingly, Simonson's claim of breach of contract will be dismissed.

**24.** Section 552 of the Restatement 2d of Torts states, in pertinent part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) .... [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

than the standard annunciated in *First Florida Bank* and the Restatement. Whereas under the *First Florida Bank* analysis an accountant could be held liable to all those persons whom he knows and intends will rely on his or her opinion, or whom he or she knows his or her client intends will so rely, under *Angel* an attorney can be held liable to a third party only where it is the apparent intent of the client to benefit a third party. "Benefit" is defined in financial terms. *See Angel*, 512 So.2d at 194.

In the instant case, Blank, Rome's client was Sunrise. Blank, Rome's services were intended to benefit the corporation itself; there are no allegations that Sunrise, the law firm's client, intended Blank, Rome's services to benefit the Outside Directors, the third party, independently of any incidental benefit they might have derived from the firm's work for the corporation. Nor is there anything in the pleadings which suggests that Sunrise intended Deloitte to benefit from Blank, Rome's services.

Therefore I conclude that Blank, Rome cannot be held liable for negligence to the Outside Directors or Deloitte, as the cross-claimants are not in privity with the law firm and do not fall within the limited exception to the privity requirement stated in *Angel*. The Directors' negligence claims and Deloitte's negligent misrepresentation claim will be dismissed.[25]

### 8. *Tortious Interference*

Blank, Rome seeks to have Deloitte's tortious interference cross-claim dismissed on two grounds. First, Blank, Rome contends that the amended complaint and indictment, on which Deloitte allegedly bases its claims, do not allege intentional misconduct by Blank, Rome. Second, it argues that as an agent of Sunrise it lacked the third party status sufficient to support a claim for tortious interference. Blank, Rome Memorandum, at 68.

### a. Pleading

■ To state a claim for tortious interference with a business relationship under Florida law, a party must show: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985); *Harllee v. Professional Service Industries, Inc.*, 1991 WL 133891, at *2, 1991 Fla.App. LEXIS 7084, at *6 (Fla.Dist.Ct. App. July 23, 1991). Each of these elements must be pleaded in order to survive a motion to dismiss; however, as was stated above, Fed.R.Civ.P. Rule 9(b) states that "malice, intent, knowledge, and other condition of mind of a person may be averred generally."

■ Blank, Rome contends that Deloitte has not alleged that Blank, Rome committed intentional misconduct. However, Deloitte's cross-claims explicitly allege that Blank, Rome acted intentionally to interfere with Deloitte's performance of services for Sunrise. Count III of the cross-claims alleges:

47. As set forth above, the Attorney Defendants committed wrongful acts intended to conceal, and having the effect of concealing, Sunrise's true financial condition and which frustrated and interfered with DH & S's engagement to render professional services to Sunrise.

48. Said acts were done intentionally and tortiously for the purpose of interfering with, and had the effect of interfering with, DH & S's performance of its engagement with Sunrise.

Deloitte's Exhibit A, at 62. Because Rule 9(b) permits a party to plead intent generally, Deloitte's pleading is sufficient to withstand dismissal on this ground.

---

**25.** I note again that Simonson's claim that he is a client of Blank, Rome is not well-pleaded; accordingly, Simonson's claim for negligence will be dismissed. *See* note 21, *supra.*

### b. Third party status

In addition, Blank, Rome contends that it lacked the third party status with respect to Deloitte's contract with Sunrise necessary to support a claim for tortious interference.

Under Florida law, one who is a party to a contract cannot be liable for interference with that contract. *Genet Co. v. Anheuser–Busch, Inc.*, 498 So.2d 683, 684 (Fla.Dist.Ct.App.1986). Therefore, initially the determination as to whether a cause of action for unlawful interference with a contractual relationship has been alleged depends on whether the defendant is or is not to be considered a party to the contractual relationship. *Buckner v. Lower Florida Keys Hospital District*, 403 So.2d 1025 (Fla.Dist.Ct.App.1981). Florida courts have held that, in certain circumstances, a party's agent can be considered a party and thus protected from liability for tortiously interfering with the party's contract with a third party. *See Sloan v. Sax*, 505 So.2d 526 (Fla.Dist.Ct.App.1987); *Covert v. Terri Aviation, Inc.*, 197 So.2d 12, 13 (Fla.Dist.Ct.App.1967) (controlling shareholder of company could not be sued in tort for allegedly inducing breach of contract by company because shareholder was representative of company).

However, in *Peacock v. General Motors Acceptance Corp.*, 432 So.2d 142 (Fla.Dist.Ct.App.1983), a Florida District Court of Appeal held that a wholly owned subsidiary (GMAC) of a corporation (GM) was not immune from suit for tortiously interfering with the corporation's contract with another party. The Court reached this conclusion despite the subsidiary's contention that it was in privity with the corporation and thus not a third party to the contract. *Id.*, at 143. The Court stated:

> We reject GMAC's reasoning and hold that GMAC's subsidiary relationship to GM does not in itself negate the possibility of GMAC's having intentionally interfered with Peacock's and Peacock Chevrolet's business relationships with GM. GMAC is a distinct legal entity, and its being a wholly owned subsidiary of GM does not alter that status. GMAC does

> not claim, much less has it established, that GM's control is such that GMAC is but an instrumentality of the parent GM.... If GMAC's tortious acts would not ordinarily subject its parent to liability, it can hardly be argued in the same circumstances that GMAC's relationship to GM immunizes GMAC from separate liability on account of tortiously interfering with GM's contracts with third persons.

*Id.*

In addition, in *Connell v. Weiss*, 1985 WL 428, LEXIS (S.D.N.Y. March 9, 1985) slip op., the District Court rejected an attorney's motion to dismiss a third-party's contract with the attorney's client. The Court held:

> The fact that Weiss was acting as an attorney when he allegedly interfered with the contract does not defeat the cause of action. It cannot be said, as a matter of law, that the alleged torts of an attorney are privileged or are otherwise insulated from suit. An attorney may be held liable to third parties if he or she has been "guilty of fraud, or collusion, or of a malicious or tortious act."

*Id.*, slip op. at 4, quoting *Koger v. Weber*, 116 Misc.2d 726, 455 N.Y.S.2d 935, 936 (1982).

Blank, Rome asserts that as general legal counsel for Sunrise it was the representative of Sunrise and, *"vis a vis* third parties, Blank, Rome was an extension of Sunrise."* Blank, Rome Memorandum, at 69. Following the reasoning of both the *Peacock* and *Connell* cases, however, I am persuaded that this argument must fail. Just as in *Peacock*, Blank, Rome is a distinct legal entity from Sunrise. Moreover, Sunrise's control over Blank, Rome was not such that it was merely an instrumentality of the corporation. Blank, Rome cannot claim to be immune from liability because of its relationship to Sunrise when Blank, Rome would not be subject to liability for the independent wrongs committed by Sunrise.

In light of *Peacock*, therefore, I predict that the Florida Supreme Court would accept the reasoning of *Connell* and hold that the fact that Blank, Rome was Sunrise's counsel is not sufficient to dismiss Deloitte's claim for tortious interference.[26]

### 9. *Damages*

Blank, Rome contends that some of the losses for which the Outside Directors and Deloitte seek damages, i.e. investment losses, litigation costs and reputation damages, are not recoverable.

█ It need not appear in the pleadings that the cross-claimants can obtain all of the relief demanded so long as it can be ascertained from the face of the complaint that some relief can be granted. *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C.Cir.1985); 5A Wright & Miller § 1357. Thus, so long as some element of the damages that the cross-claimants seek can be granted, it is improper to dismiss the pleadings on this ground.

### a. Investment Losses

█ Initially, Blank, Rome argued that if the Outside Directors were seeking damages for "investment losses" because their stock had become worthless, the claims could be asserted only derivatively. Blank, Rome Memorandum, at 73. However, Blank, Rome subsequently conceded that if the damage claims are confined to the loss the Directors allegedly suffered by purchasing over-priced stock, the claim is not derivative. Blank, Rome Supplemental Memorandum, at 66.

Therefore, the claims seeking damages for investment losses is proper. As it appears from the pleadings that some relief can be granted, the cross-claims will not be dismissed on this ground.[27]

### 10. *Section 10(b) Claim*

Finally, Blank, Rome argues that the claims of the Outside Directors arising under Section 10(b) of the Securities and Exchange Act of 1934 must be dismissed because they are barred by the statute of limitations and, additionally, they have not been pleaded with sufficient particularity.

### a. Statute of Limitations

█ The Supreme Court recently held that litigation instituted pursuant to Section 10(b) and Rule 10b–5 of the Securities and Exchange Act of 1934 must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

Sunrise was incorporated on March 10, 1980. By agreement, the parties tolled the statute of limitations in 1986. In light of the Court's decision in *Lampf*, the Directors concede that any of their fraud claims that preceded 1983, three years before the statute was tolled, are barred.

Blank, Rome contends that any alleged misrepresentation or omission which induced the Directors to purchase stock must have occurred at the latest on March 10, 1980, the date of incorporation, and as a result, all of the Directors' § 10(b) claims are barred. Blank, Rome Supplemental Memorandum, at 72. The Directors argue that the omissions continued throughout the life of Sunrise, from 1980 through 1986, and that these omissions caused the Directors to purchase securities after 1983. Transcript, Oral Argument, at 64. In addition, the Directors assert that their cross-claims refer to all of the allegations in the FDIC and shareholders' complaints, which allege misrepresentations spanning the en-

---

**26.** Although *Connell* is not a Florida case and therefore is not controlling, as there is no authoritative decision by the Florida Supreme Court on this question, I am required to predict how the Florida Supreme Court would decide were it confronted with this issue, even if that entails looking to cases originating in other jurisdictions.

**27.** Although I have concluded that the damages claims are sufficient to withstand a motion to dismiss, this conclusion does not preclude later consideration of recoverability of certain items of damage.

tire life of Sunrise. Certain Non–Settling Defendants' Sur-reply, at 43–44.

I conclude that the Outside Directors have pleaded allegations of fraud after 1983, and those claims remain. As the parties agree, the allegations of misrepresentations or omissions prior to 1983 are barred by the statute of limitations.

b. Pleading

In addition to arguing that the Directors' § 10(b) claims must be dismissed because they fail to plead fraud with particularity as required by Fed.R.Civ.P. Rule 9(b), *see* Section II(B)(1)(b), *supra,* Blank, Rome asserts that the Directors did not plead with particularity any misrepresentations by Blank, Rome in connection with the Directors' purchases of Sunrise stock. Blank, Rome Supplemental Memorandum, at 69.

A claim brought under § 10(b) or Rule 10b–5 requires that the misrepresentation be made "in connection with" the purchase or sale of a security. *Angelastro v. Prudential–Bache Secur., Inc.,* 764 F.2d 939, 942 (3d Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985). The Supreme Court has interpreted the "in connection with" language of § 10(b) "to require that the plaintiff has 'suffered an injury as a result of deceptive practices touching [the purchase or] sale of securities.'" *Id.,* at 943, quoting *Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 168–69, 30 L.Ed.2d 128 (1971). The Court of Appeals for the Third Circuit has construed the "touching" requirement as mandating that there be some "causal connection between the alleged fraud and the purchase or sale" of a security. *Angelastro,* 764 F.2d at 943, citing *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 194 (3d Cir. 1976).

■ Here, the Outside Directors have alleged that they purchased and held Sunrise stock at artificially inflated prices "as a result" of the misrepresentations. *See* Outside Directors' Amended Cross–Claims ¶ 35. Thus, they have satisfied the "in connection with" requirement of Rule 10b–5.

■ Finally, Blank, Rome contends that the § 10(b) claims must be dismissed for failure to plead reliance, arguing that the Directors are not entitled to take advantage of the fraud-on-the-market theory, under which reliance is presumed.

The Supreme Court explained the fraud-on-the-market theory in *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988):

> An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action.

*Id.,* at 225, 108 S.Ct. at 980. In addition, in *Peil v. Speiser,* 806 F.2d 1154, 1161 (3d Cir.1986), the Court of Appeals for the Third Circuit held that if plaintiffs make a showing that defendants had made material misrepresentations the Court will presume that the misrepresentations occasioned an increase in the stock's value that induced plaintiffs to purchase the stock. The Court stated that there were several appropriate defenses to the presumption, including that the market did not respond to the alleged misrepresentations, or that plaintiffs knew of the falsity of defendants' representations or would have purchased the stock even if they had known of them. *Id. See also In re Phillips Petroleum,* 881 F.2d at 1236.

Blank, Rome asserts that it is not logical for this Court to presume reliance on the market price by the directors of the issuer. Blank, Rome Supplemental Memorandum, at 68. Under the rationale stated in *Peil,* however, the Directors are entitled to a presumption of reliance because they have pleaded a material misrepresentation.

Even if I were to conclude that the fraud-on-the-market theory is not appropriate here, the Directors' claims would not be dismissed because the Directors have alleged that they actually relied on the mis-

representations.[28] This is sufficient to satisfy Rule 9(b).

### III. *Conclusion*

For the reasons stated herein, the non-settling defendants' claims for contribution, implied indemnity under the federal securities laws, breach of contract, and negligence will be dismissed. The claims for securities fraud under Section 10(b) and Rule 10b–5 of the Securities Exchange Act will be dismissed to the extent that they are barred by the statute of limitations. In all other respects, Blank, Rome's motion will be denied.

### ORDER

AND NOW, this 22nd day of May, 1992, upon consideration of the Motion of Blank, Rome, Comisky & McCauley to Dismiss All Cross–Claims, the supporting and opposing memoranda thereto and the oral argument held on November 4, 1991, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion is GRANTED with respect to the cross-claims asserting contribution; the cross-claims asserting implied indemnity under the federal securities laws; the cross-claims asserting breach of contract; the cross-claims asserting negligence or negligent misrepresentation; and the cross-claims asserting securities fraud under Section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934, but only to the extent that they are barred by the statute of limitations.

2. In all other respects, the motion is DENIED.

---

28. For example, the Outside Directors' Amended Cross-claims, ¶ 35, states: "As a result of these misrepresentations, the Outside Directors purchased and held Sunrise stock at artificially inflated prices in reliance upon the integrity of the market and upon material misrepresentations, including omissions, by Blank, Rome, Foxman, and Gitomer, without knowing the falsity of the material misrepresentations."